TABLE OF CONTENTS

SECTION 00700

CONTRACT CLAUSES


| PARAGRAPH | CLAUSE | TITLE | PAGE |
|---|---|---|---|
| 1 | 52.252-2 | CLAUSES INCORPORATED BY REFERENCE (JUN 1988) | 00700-1 |
| 2 | 252.201-7000 | CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991) | 00700-1 |
| 3 | | DEFINITIONS (JUL 1989) EFARS 52.202-10001 | 00700-1 |
| 4 | 52.203-3 | GRATUITIES (APR 1984) | 00700-1 |
| 5 | 52.203-5 | COVENANT AGAINST CONTINGENT FEES (APR 1984) | 00700-1 |
| 6 | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995) | 00700-2 |
| 7 | 52.203-7 | ANTI-KICKBACK PROCEDURES (JUL 1995) | 00700-2 |
| 8 | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (SEP 1990) | 00700-2 |
| 9 | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JAN 1990) | 00700-2 |
| 10 | 252.203-7000 | STATUTORY PROHIBITION ON COMPENSATION TO FORMER DEPARTMENT OF DEFENSE EMPLOYEES (NOV 1995) | 00700-2 |
| 11 | 252.203-7001 | SPECIAL PROHIBITION ON EMPLOYMENT (NOV 1995) | 00700-2 |
| 12 | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTOR DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (AUG 1995) | 00700-2 |
| 13 | 52.211-18 | VARIATION IN ESTIMATED QUANTITY (APR 1984) | 00700-2 |
| 14 | 52.214-26 | AUDIT AND RECORDS--SEALED BIDDING (OCT 1995) | 00700-2 |
| 15 | 52.214-27 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1995) | 00700-2 |
| 16 | 52.214-28 | SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1995) | 00700-3 |

SECTION 00700

CONTRACT CLAUSES


| | | | |
|---|---|---|---|
| 17 | 52.219-8 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS (OCT 1995) | 00700-3 |
| 18 | 52.219-9 I | SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN (OCT 1995)--ALTERNATE I (OCT 1995) | 00700-4 |
| 19 | 252.219-7003 | SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN (DoD CONTRACTS) (NOV 1995) | 00700-8 |
| 20 | 52.219-16 | LIQUIDATED DAMAGES--SUBCONTRACTING PLAN (OCT 1995) | 00700-10 |
| 21 | 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (APR 1984) | 00700-11 |
| 22 | 52.222-3 | CONVICT LABOR (APR 1984) | 00700-11 |
| 23 | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (JUL 1995) | 00700-11 |
| 24 | 52.222-6 | DAVIS-BACON ACT (FEB 1995) | 00700-11 |
| 25 | 52.222-7 | WITHHOLDING OF FUNDS (FEB 1988) | 00700-11 |
| 26 | 52.222-8 | PAYROLLS AND BASIC RECORDS (FEB 1988) | 00700-11 |
| 27 | 52.222-9 | APPRENTICES AND TRAINEES (FEB 1988) | 00700-11 |
| 28 | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988) | 00700-11 |
| 29 | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (FEB 1988) | 00700-11 |
| 30 | 52.222-12 | CONTRACT TERMINATION--DEBARMENT (FEB 1988) | 00700-11 |
| 31 | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988) | 00700-11 |
| 32 | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (FEB 1988) | 00700-11 |
| 33 | 52.222-15 | CERTIFICATION OF ELIGIBILITY (FEB 1988) | 00700-11 |
| 34 | 52.222-26 | EQUAL OPPORTUNITY (APR 1984) | 00700-11 |
| 35 | 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 1984) | 00700-11 |

SECTION 00700
CONTRACT CLAUSES


| | | | |
|---|---|---|---|
| 36 | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (APR 1984) | 00700-12 |
| 37 | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (APR 1984) | 00700-12 |
| 38 | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (JAN 1988) | 00700-12 |
| 39 | 52.223-2 | CLEAN AIR AND WATER (APR 1984) | 00700-12 |
| 40 | 52.223-6 | DRUG-FREE WORKPLACE (JUL 1990) | 00700-12 |
| 41 | 52.223-14 | TOXIC CHEMICAL RELEASE REPORTING (OCT 1995) | 00700-12 |
| 42 | 52.225-5 | BUY AMERICAN ACT--CONSTRUCTION MATERIALS (MAY 1992) | 00700-12 |
| 43 | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (MAY 1992) | 00700-12 |
| 44 | 52.226-1 | UTILIZATION OF INDIAN ORGANIZATIONS AND INDIAN-OWNED ECONOMIC ENTERPRISE (AUG 1991) | 00700-12 |
| 45 | 52.227-1 | AUTHORIZATION AND CONSENT (JUL 1995) | 00700-12 |
| 46 | 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (APR 1984) | 00700-12 |
| 47 | 52.227-4 | PATENT INDEMNITY--CONSTRUCTION CONTRACTS (APR 1984) | 00700-12 |
| 48 | 252.227-7033 | RIGHTS IN SHOP DRAWINGS (APR 1966) | 00700-12 |
| 49 | 52.228-5 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION (SEP 1989) | 00700-13 |
| 50 | 52.228-11 | PLEDGES OF ASSETS (FEB 1992) | 00700-13 |
| 51 | 52.229-3 | FEDERAL, STATE, AND LOCAL TAXES (JAN 1991) | 00700-13 |
| 52 | 252.231-7000 | SUPPLEMENTAL COST PRINCIPLES (DEC 1991) | 00700-13 |
| 53 | 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (APR 1989) | 00700-13 |

SECTION 00700
CONTRACT CLAUSES


| | | | |
|---|---|---|---|
| 54 | 52.232-17 | INTEREST (JAN 1991) | 00700-15 |
| 55 | 52.232-23 | ASSIGNMENT OF CLAIMS (JAN 1986) | 00700-15 |
| 56 | 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (MAR 1994) | 00700-15 |
| 57 | 52.233-1 | DISPUTES (OCT 1995) | 00700-23 |
| 58 | 52.233-3 | PROTEST AFTER AWARD (OCT 1995) | 00700-25 |
| 59 | 252.233-7000 | CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF (MAY 1994) | 00700-25 |
| 60 | 52.236-2 | DIFFERING SITE CONDITIONS (APR 1984) | 00700-27 |
| 61 | 52.236-3 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984) | 00700-27 |
| 62 | 52.236-5 | MATERIAL AND WORKMANSHIP (APR 1984) | 00700-28 |
| 63 | 52.236-6 | SUPERINTENDENCE BY THE CONTRACTOR (APR 1984) | 00700-29 |
| 64 | 52.236-7 | PERMITS AND RESPONSIBILITIES (NOV 1991) | 00700-29 |
| 65 | 52.236-8 | OTHER CONTRACTS (APR 1984) | 00700-30 |
| 66 | 52.236-9 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984) | 00700-30 |
| 67 | 52.236-10 | OPERATIONS AND STORAGE AREAS (APR 1984) | 00700-31 |
| 68 | 52.236-11 | USE AND POSSESSION PRIOR TO COMPLETION (APR 1984) | 00700-31 |
| 69 | 52.236-12 | CLEANING UP (APR 1984) | 00700-31 |
| 70 | 52.236-13 I | ACCIDENT PREVENTION (NOV 1991)--ALTERNATE I (NOV 1991) | 00700-32 |
| 71 | 52.236-26 | PRECONSTRUCTION CONFERENCE (FEB 1995) | 00700-33 |
| 72 | 252.236-7000 | MODIFICATION PROPOSALS--PRICE BREAKDOWN (DEC 1991) | 00700-33 |
| 73 | 52.242-13 | BANKRUPTCY (JUL 1995) | 00700-33 |

SECTION 00700

CONTRACT CLAUSES


| | | | |
|---|---|---|---|
| 74 | 52.243-4 | CHANGES (AUG 1987) | 00700-33 |
| 75 | 252.243-7001 | PRICING OF CONTRACT MODIFICATIONS (DEC 1991) | 00700-34 |
| 76 | 52.244-1 | SUBCONTRACTS (FIXED-PRICE CONTRACTS) (FEB 1995) | 00700-34 |
| 77 | 52.244-6 | SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS (OCT 1995) | 00700-34 |
| 78 | 252.247-7023 | TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995) | 00700-35 |
| 79 | 252.247-7024 | NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995) | 00700-38 |
| 80 | 52.248-3 I | VALUE ENGINEERING--CONSTRUCTION (MAR 1989)--ALTERNATE I (APR 1984) | 00700-38 |
| 81 | 52.249-2 I | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)-- ALTERNATE I (APR 1984) | 00700-38 |
| 82 | 52.249-10 | DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) | 00700-38 |
| 83 | 52.252-6 | AUTHORIZED DEVIATIONS IN CLAUSES (APR 1984) | 00700-39 |
| 84 | 52.253-1 | COMPUTER GENERATED FORMS (JAN 1991) | 00700-40 |

SECTION 00700
CONTRACT CLAUSES

1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

(End of clause)

2 252.201-7000 CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991)

(a) Definition. "Contracting officer's representative" means an individual designated in accordance with subsection 201.602-2 of the Defense Federal Acquisition Regulation Supplement and authorized in writing by the Contracting Officer to perform specific technical or administrative functions.

(b) If the Contracting Officer designates a contracting officer's representative (COR), the Contractor will receive a copy of the written designation. It will specify the extent of the COR's authority to act on behalf of the Contracting Officer. The COR is not authorized to make any commitments or changes that will affect price, quality, quantity, delivery, or any other term or condition of the contract.

(End of clause)

3 DEFINITIONS (JUL 1989) EFARS 52.202-10001

(a) The term "head of the agency" or "Secretary" as used herein means the Secretary of the Army; and the term "his duly authorized representative" means the Chief of Engineers, Department of the Army, or an individual or board designated by him.

(b) The agency board of contract appeals having jurisdiction over all appeals from final decisions of the Contracting Officer under the Contract Disputes Act of 1978 is the Corps of Engineers Board of Contract Appeals, Office of the Chief of Engineers, Pulaski Building, 20 Massachusetts Avenue, N.W., Washington, D.C. 20314-1000.

4 52.203-3 GRATUITIES (APR 1984)
(Reference 3.202)

5 52.203-5 COVENANT AGAINST CONTINGENT FEES (APR 1984)
(Reference 3.404(c))

| | | |
|---|---|---|
| 6 | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995)<br>(Reference 3.503-2) |
| 7 | 52.203-7 | ANTI-KICKBACK PROCEDURES (JUL 1995)<br>(Reference 3.502-3) |
| 8 | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (SEP 1990)<br>(Reference 3.104-10(c)) |
| 9 | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JAN 1990)<br>(Reference 3.808(b)) |
| 10 | 252.203-7000 | STATUTORY PROHIBITION ON COMPENSATION TO FORMER DEPARTMENT OF DEFENSE EMPLOYEES (NOV 1995)<br>(Reference 03.170-4) |
| 11 | 252.203-7001 | SPECIAL PROHIBITION ON EMPLOYMENT (NOV 1995)<br>(Reference 03.570-5) |
| 12 | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (AUG 1995)<br>(Reference 9.409(b)) |
| 13 | 52.211-18 | VARIATION IN ESTIMATED QUANTITY (APR 1984) |

If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. If the quantity variation is such as to cause an increase in the time necessary for completion, the Contractor may request, in writing, an extension of time, to be received by the Contracting Officer within 10 days from the beginning of the delay, or within such further period as may be granted by the Contracting Officer before the date of final settlement of the contract. Upon the receipt of a written request for an extension, the Contracting Officer shall ascertain the facts and make an adjustment for extending the completion date as, in the judgement of the Contracting Officer, is justified.

(End of clause)

| | | |
|---|---|---|
| 14 | 52.214-26 | AUDIT AND RECORDS--SEALED BIDDING (OCT 1995)<br>(Reference 14.201-7(a)) |
| 15 | 52.214-27 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1995)<br>(Reference 14.201-7(b)) |

| | | |
|---|---|---|
| 16 | 52.214-28 | SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1995)<br>(Reference 14.201-7(c)) |
| 17 | 52.219-8 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS (OCT 1995) |

(a) It is the policy of the United States that small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals and small business concerns owned and controlled by women shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals and small business concerns owned and controlled by women.

(b) The Contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. The Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of the Contractor's compliance with this clause.

(c) As used in this contract, the term "small business concern" shall mean a small business as defined pursuant to section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 per centum of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals. This term also means a small business concern that is at least 51 percent unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an

economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirements of 13 CFR 124. The Contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to section 8(a) of the Small Business Act. The Contractor shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

(d) The term "small business concern owned and controlled by women" shall mean a small business concern (i) which is at least 51 percent owned by one or more women, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women, and (ii) whose management and daily business operations are controlled by one or more women; and

(e) Contractors acting in good faith may rely on written representations by their subcontractors regarding their status as a small business concern, a small business concern owned and controlled by socially and economically disadvantaged individuals or a small business concern owned and controlled by women.

(End of clause)

18 52.219-9 I SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN (OCT 1995)--ALTERNATE I (OCT 1995)

(a) This clause does not apply to small business concerns.

(b) "Commercial product," as used in this clause, means a product in regular production that is sold in substantial quantities to the general public and/or industry at established catalog or market prices. It also means a product which, in the opinion of the Contracting Officer, differs only insignificantly from the Contractor's commercial product.

"Subcontract," as used in this clause, means any agreement (other than one involving an employer-employee relationship) entered into by a Federal Government prime Contractor or subcontractor calling for supplies or services required for performance of the contract or subcontract.

(c) The apparent low bidder, upon request by the Contracting Officer, shall submit a subcontracting plan, where applicable, which separately addresses subcontracting with small business concerns, with small disadvantaged business concerns and with women-owned small business

concerns. If the bidder is submitting an individual contract plan, the plan must separately address subcontracting with small business concerns, small disadvantaged business concerns and women-owned small business concerns, with a separate part for the basic contract and separate parts for each option (if any). The plan shall be included in and made a part of the resultant contract. The subcontracting plan shall be submitted within the time specified by the Contracting Officer. Failure to submit the subcontracting plan shall make the bidder ineligible for the award of a contract.

(d) The offeror's subcontracting plan shall include the following:

(1) Goals, expressed in terms of percentages of total planned subcontracting dollars, for the use of small business concerns, small disadvantaged business concerns and women-owned small business concerns as subcontractors. The offeror shall include all subcontracts that contribute to contract performance, and may include a proportionate share of products and services that are normally allocated as indirect costs.

(2) A statement of--

(i) Total dollars planned to be subcontracted;

(ii) Total dollars planned to be subcontracted to small business concerns;

(iii) Total dollars planned to be subcontracted to small disadvantaged business concerns; and

(iv) Total dollars planned to be subcontracted to women-owned small business concerns.

(3) A description of the principal types of supplies and services to be subcontracted, and an identification of the types planned for subcontracting to (i) small business concerns, (ii) small disadvantaged business concerns and (iii) women-owned small business concerns.

(4) A description of the method used to develop the subcontracting goals in paragraph (d)(1) of this clause.

(5) A description of the method used to identify potential sources for solicitation purposes (e.g., existing company source lists, the Procurement Automated Source System (PASS) of the Small Business Administration, the National Minority Purchasing Council Vendor Information Service, the Research and Information Division of the Minority Business Development Agency in the Department of Commerce, or small, small disadvantaged and women-owned small business concerns trade associations). A firm may rely on the information contained in PASS as an accurate representation of a concern's size and ownership characteristics for purposes of maintaining a small business source list. A firm may rely on PASS as its small business source list. Use of the

PASS as its source list does not relieve a firm of its responsibilities (e.g., outreach, assistance, counseling, publicizing subcontracting opportunities) in this clause.

(6) A statement as to whether or not the offeror included indirect costs in establishing subcontracting goals, and a description of the method used to determine the proportionate share of indirect costs to be incurred with (i) small business concerns, (ii) small disadvantaged business concerns, and (iii) women-owned small business concerns.

(7) The name of the individual employed by the offeror who will administer the offeror's subcontracting program, and a description of the duties of the individual.

(8) A description of the efforts the offeror will make to assure that small, small disadvantaged and women-owned small business concerns have an equitable opportunity to compete for subcontracts.

(9) Assurances that the offeror will include the clause in this contract entitled "Utilization of Small, Small Disadvantaged and Women-Owned Small Business Concerns" in all subcontracts that offer further subcontracting opportunities, and that the offeror will require all subcontractors (except small business concerns) who receive subcontracts in excess of $500,000 ($1,000,000 for construction of any public facility) to adopt a plan similar to the plan agreed to by the offeror.

(10) Assurances that the offeror will (i) cooperate in any studies or surveys as may be required, (ii) submit periodic reports in order to allow the Government to determine the extent of compliance by the offeror with the subcontracting plan, (iii) submit Standard Form (SF) 294, Subcontracting Report for Individual Contracts, and/or SF 295, Summary Subcontract Report, in accordance with the instructions on the forms, and (iv) ensure that its subcontractors agree to submit Standard Forms 294 and 295.

(11) A recitation of the types of records the offeror will maintain to demonstrate procedures that have been adopted to comply with the requirements and goals in the plan, including establishing source lists; and a description of its efforts to locate small, small disadvantaged and women-owned small business concerns and award subcontracts to them. The records shall include at least the following (on a plant-wide or company-wide basis, unless otherwise indicated):

(i) Source lists (e.g., PASS), guides, and other data that identify small, small disadvantaged and women-owned small business concerns.

(ii) Organizations contacted in an attempt to locate sources that are small, small disadvantaged or women-owned small business concerns.

(iii) Records on each subcontract solicitation resulting in an award of more than $100,000, indicating (A) whether small business concerns were solicited and if not, why not, (B) whether small disadvantaged business concerns were solicited and if not, why not, (C) whether women-owned small business concerns were solicited and if not, why not, and (D) if applicable, the reason award was not made to a small business concern.

(iv) Records of any outreach efforts to contact (A) trade associations, (B) business development organizations, and (C) conferences and trade fairs to locate small, small disadvantaged and women-owned small business sources.

(v) Records of internal guidance and encouragement provided to buyers through (A) workshops, seminars, training, etc., and (B) monitoring performance to evaluate compliance with the program's requirements.

(vi) On a contract-by-contract basis, records to support award data submitted by the offeror to the Government, including the name, address, and business size of each subcontractor. Contractors having company or division-wide annual plans need not comply with this requirement.

(e) In order to effectively implement this plan to the extent consistent with efficient contract performance, the Contractor shall perform the following functions:

(1) Assist small, small disadvantaged and women-owned small business concerns by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns. Where the contractor's lists of potential small, small disadvantaged and women-owned small business subcontractors are excessively long, reasonable effort shall be made to give all such small business concerns an opportunity to compete over a period of time.

(2) Provide adequate and timely consideration of the potentialities of small, small disadvantaged and women-owned small business concerns in all "make-or-buy" decisions.

(3) Counsel and discuss subcontracting opportunities with representatives of small, small disadvantaged and women-owned small business firms.

(4) Provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as small, small disadvantaged or women-owned small business for the purpose of obtaining a subcontract that is to be included as part or all of a goal contained in the Contractor's subcontracting plan.

(f) A master subcontracting plan on a plant or division-wide basis which contains all the elements required by (d) above, except goals, may be incorporated by reference as a part of the subcontracting plan required of the offeror by this clause; provided, (1) the master plan has been approved, (2) the offeror provides copies of the approved master plan and evidence of its approval to the Contracting Officer, and (3) goals and any deviations from the master plan deemed necessary by the Contracting Officer to satisfy the requirements of this contract are set forth in the individual subcontracting plan.

(g)(1) If a commercial product is offered, the subcontracting plan required by this clause may relate to the offeror's production generally, for both commercial and noncommercial products, rather than solely to the Government contract. In these cases, the offeror shall, with the concurrence of the Contracting Officer, submit one company-wide or division-wide annual plan.

(2) The annual plan shall be reviewed for approval by the agency awarding the offeror its first prime contract requiring a subcontracting plan during the fiscal year, or by an agency satisfactory to the Contracting Officer.

(3) The approved plan shall remain in effect during the offeror's fiscal year for all of the offeror's commercial products.

(h) Prior compliance of the offeror with other such subcontracting plans under previous contracts will be considered by the Contracting Officer in determining the responsibility of the offeror for award of the contract.

(i) The failure of the Contractor or subcontractor to comply in good faith with (1) the clause of this contract entitled "Utilization Of Small, Small Disadvantaged and Women-Owned Small Business Concerns," or (2) an approved plan required by this clause, shall be a material breach of the contract.

(End of clause)

19 252.219-7003 SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN (DoD CONTRACTS) (NOV 1995)

This clause supplements the Federal Acquisition Regulation 52.219-9, Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan, clause of this contract.

(a) Definitions.

"Historically black colleges and universities," as used in this clause,

means institutions determined by the Secretary of Education to meet the requirements of 34 CFR 608.2. The term also means any nonprofit research institution that was an integral part of such a college or university before November 14, 1986.

"Minority institutions," as used in this clause, means institutions meeting the requirements of section 1046(3) of the Higher Education Act of 1965 (20 U.S.C. 1135d-5(3)). The term also includes Hispanic-serving institutions as defined in section 316(b)(1) of such Act (20 U.S.C. 1059c(b)(1)).

(b) Except for company or division-wide commercial items subcontracting plans, the term "small disadvantaged business," when used in the FAR 52.219-9 clause, includes historically black colleges and universities and minority institutions, in addition to small disadvantaged business concerns.

(c) Work under the contract or its subcontracts shall be credited toward meeting the small disadvantaged business concern goal required by paragraph (d) of the FAR 52.219-9 clause when:

(1) It is performed on Indian lands or in joint venture with an Indian tribe or a tribally-owned corporation, and

(2) It meets the requirements of 10 U.S.C. 2323a.

(d) Subcontracts awarded to workshops approved by the Committee for Purchase from People Who are Blind or Severely Disabled (41 U.S.C. 46-48), may be counted toward the Contractor's small business subcontracting goal.

(e) A mentor firm, under the Pilot Mentor-Protege Program established under Section 831 of Pub. L. 101-510, as amended, may count toward its small disadvantaged business goal, subcontracts awarded--

(1) Protege firms which are qualified organizations employing the severely handicapped; and

(2) Former protege firms that meet the criteria in Section 831(g)(4) of Pub. L. 101-510.

(f) The master plan approval referred to in paragraph (f) of the FAR 52.219-9 clause is approval by the Contractor's cognizant contract administration activity.

(g) In those subcontracting plans which specifically identify small, small disadvantaged, and women-owned small businesses, the Contractor shall notify the Administrative Contracting Officer of any substitutions of firms that are not small, small disadvantaged, or women-owned small businesses for the firms listed in the subcontracting plan. Notifications shall be in writing and shall occur within a reasonable period of time after award of the subcontract. Contractor-specified formats shall be acceptable.

(End of clause)

20 52.219-16 LIQUIDATED DAMAGES--SUBCONTRACTING PLAN (OCT 1995)

(a) "Failure to make a good faith effort to comply with the subcontracting plan," as used in this clause, means a willful or intentional failure to perform in accordance with the requirements of the subcontracting plan approved under the clause in this contract entitled "Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan," or willful or intentional action to frustrate the plan.

(b) If, at contract completion, or in the case of a commercial product plan, at the close of the fiscal year for which the plan is applicable, the Contractor has failed to meet its subcontracting goals and the Contracting Officer decides in accordance with paragraph (c) of this clause that the Contractor failed to make a good faith effort to comply with its subcontracting plan, established in accordance with the clause in this contract entitled "Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan," the Contractor shall pay the Government liquidated damages in an amount stated. The amount of probable damages attributable to the Contractor's failure to comply, shall be an amount equal to the actual dollar amount by which the Contractor failed to achieve each subcontract goal or, in the case of a commercial products plan, that portion of the dollar amount allocable to Government contracts by which the Contractor failed to achieve each subcontract goal.

(c) Before the Contracting Officer makes a final decision that the Contractor has failed to make such good faith effort, the Contracting Officer shall give the Contractor written notice specifying the failure and permitting the Contractor to demonstrate what good faith efforts have been made. Failure to respond to the notice may be taken as an admission that no valid explanation exists. If, after consideration of all the pertinent data, the Contracting Officer finds that the Contractor failed to make a good faith effort to comply with the subcontracting plan, the Contracting Officer shall issue a final decision to that effect and require that the Contractor pay the Government liquidated damages as provided in paragraph (b) of this clause.

(d) With respect to commercial product plans; i.e., company-wide or division-wide subcontracting plans approved under paragraph (g) of the clause in this contract entitled "Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan," the Contracting Officer of the agency that originally approved the plan will exercise the functions of the Contracting Officer under this clause on behalf of all agencies that

awarded contracts covered by that commercial product plan.

(e) The Contractor shall have the right of appeal, under the clause in this contract entitled, Disputes, from any final decision of the Contracting Officer.

(f) Liquidated damages shall be in addition to any other remedies that the Government may have.

(End of clause)

| | | |
|---|---|---|
| 21 | 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (APR 1984) (Reference 22.103-5(a)) |
| 22 | 52.222-3 | CONVICT LABOR (APR 1984) (Reference 22.202) |
| 23 | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (JUL 1995) (Reference 22.305) |
| 24 | 52.222-6 | DAVIS-BACON ACT (FEB 1995) (Reference 22.407(a)(1) |
| 25 | 52.222-7 | WITHHOLDING OF FUNDS (FEB 1988) (Reference 22.407(a)(2) |
| 26 | 52.222-8 | PAYROLLS AND BASIC RECORDS (FEB 1988) (Reference 22.407(a)(3) |
| 27 | 52.222-9 | APPRENTICES AND TRAINEES (FEB 1988) (Reference 22.407(a)(4) |
| 28 | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988) (Reference 22.407(a)(5) |
| 29 | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (FEB 1988) (Reference 22.407(a)(6) |
| 30 | 52.222-12 | CONTRACT TERMINATION--DEBARMENT (FEB 1988) (Reference 22.407(a)(7) |
| 31 | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988) (Reference 22.407(a)(8) |
| 32 | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (FEB 1988) (Reference 22.407(a)(9) |
| 33 | 52.222-15 | CERTIFICATION OF ELIGIBILITY (FEB 1988) (Reference 22.407(a)(1) |
| 34 | 52.222-26 | EQUAL OPPORTUNITY (APR 1984) (Reference 22.810(e)) |
| 35 | 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 1984) (Reference 22.810(f)) |

| | | |
|---|---|---|
| 36 | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (APR 1984) (Reference 22.1308) |
| 37 | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (APR 1984) (Reference 22.1408) |
| 38 | 52.222-37 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (JAN 1988) (Reference 22.1308(b)) |
| 39 | 52.223-2 | CLEAN AIR AND WATER (APR 1984) (Reference 23.105(b)) |
| 40 | 52.223-6 | DRUG-FREE WORKPLACE (JUL 1990) (Reference 23.505(b)) |
| 41 | 52.223-14 | TOXIC CHEMICAL RELEASE REPORTING (OCT 1995) (Reference 23.907(b)) |
| 42 | 52.225-5 | BUY AMERICAN ACT--CONSTRUCTION MATERIALS (MAY 1992) (Reference 25.205) |
| 43 | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (MAY 1992) (Reference 25.704) |
| 44 | 52.226-1 | UTILIZATION OF INDIAN ORGANIZATIONS AND INDIAN-OWNED ECONOMIC ENTERPRISES (AUG 1991) (Reference 26.104) |
| 45 | 52.227-1 | AUTHORIZATION AND CONSENT (JUL 1995) (Reference 27.201-2(a)) |
| 46 | 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (APR 1984) (Reference 27.202-2) |
| 47 | 52.227-4 | PATENT INDEMNITY--CONSTRUCTION CONTRACTS (APR 1984) (Reference 27.203-5) |
| 48 | 252.227-7033 | RIGHTS IN SHOP DRAWINGS (APR 1966) |

(a) Shop drawings for construction means drawings, submitted to the Government by the Construction Contractor, subcontractor or any lower-tier subcontractor pursuant to a construction contract, showing in detail (i) the proposed fabrication and assembly of structural elements and (ii) the installation (i.e., form, fit, and attachment details) of materials or equipment. The Government may duplicate, use, and disclose in any manner and for any purpose shop drawings delivered under this contract.

(b) This clause, including this paragraph (b), shall be included in all subcontracts hereunder at any tier.

(End of clause)

| | | |
|---|---|---|
| 49 | 52.228-5 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION (SEP 1989) (Reference 28.310) |
| 50 | 52.228-11 | PLEDGES OF ASSETS (FEB 1992) (Reference 28.203-6) |
| 51 | 52.229-3 | FEDERAL, STATE, AND LOCAL TAXES (JAN 1991) (Reference 29.401-3) |
| 52 | 252.231-7000 | SUPPLEMENTAL COST PRINCIPLES (DEC 1991) (Reference 31.100-70) |
| 53 | 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (APR 1989) |

(a) The Government shall pay the Contractor the contract price as provided in this contract.

(b) The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer. The Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of the work, which shall substantiate the payment amount requested in order to provide a basis for determining progress payments, in such detail as requested by the Contracting Officer. In the preparation of estimates the Contracting Officer may authorize material delivered on the site and preparatory work done to be taken into consideration. Material delivered to the Contractor at locations other than the site may also be taken into consideration if--

(1) Consideration is specifically authorized by this contract; and

(2) The Contractor furnishes satisfactory evidence that it has acquired title to such material and that the material will be used to perform this contract.

(c) Along with each request for progress payments, the contractor shall furnish the following certification, or payment shall not be made:

I hereby certify, to the best of my knowledge and belief, that--

(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code; and

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a

subcontractor or supplier in accordance with the terms and conditions of the subcontract.

_______________________
(Name)

_______________________
(Title)

_______________________
(Date)

(d) If the Contractor, after making a certified request for progress payments, discovers that a portion or all of such request constitutes a payment for performance by the Contractor that fails to conform to the specifications, terms, and conditions of this contract (hereinafter referred to as the "unearned amount"), the Contractor shall--

(1) Notify the Contracting Officer of such performance deficiency; and

(2) Be obligated to pay the Government an amount (computed by the Contracting Officer in the manner provided in 31 U.S.C 3903(c)(1)) equal to interest on the unearned amount from the date of receipt of the unearned amount until--

(i) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(ii) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

(e) If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved. When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment shall be made for the completed work without retention of a percentage.

(f) All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as--

(1) Relieving the Contractor from the sole responsibility for all

material and work upon which payments have been made or the restoration of any damaged work; or

(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

(g) In making these progress payments, the Government shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements, when applicable) after the Contractor has furnished evidence of full payment to the surety. The retainage provisions in paragraph (e) of this clause shall not apply to that portion of progress payments attributable to bond premiums.

(h) The Government shall pay the amount due the Contractor under this contract after--

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release. A release may also be required of the assignee if the Contractor's claim to amounts payable under this contract has been assigned under the Assignment of Claims Act of 1940 (31 U.S.C. 3727 and 41 U.S.C. 15).

(i) Notwithstanding any provision of this contract, progress payments shall not exceed 80 percent on work accomplished on undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in FAR Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes.

(End of clause)

| | | |
|---|---|---|
| 54 | 52.232-17 | INTEREST (JAN 1991)<br>(Reference 32.617(a)&() |
| 55 | 52.232-23 | ASSIGNMENT OF CLAIMS (JAN 1986)<br>(Reference 32.806(a)(1) |
| 56 | 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (MAR 1994) |

Notwithstanding any other payment terms in this contract, the Government will make invoice payments and contract financing payments under the terms

and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or an electronic funds transfer is is made. Definitions of pertinent terms are set forth in 32.902. All days referred to in this clause are calendar days, unless otherwise specified.

(a) Invoice Payments.

(1) For purposes of this clause, there are several types of invoice payments which may occur under this contract, as follows:

(i) Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of work or services performed, including payments for reaching milestones in any project:

(A) The due date for making such payments shall be 14 days after receipt of the payment request by the designated billing office. However, if the designated billing office fails to annotate the payment request with the actual date of receipt, the payment due date shall be deemed to be the 14th day after the date the Contractor's payment request is dated, provided a proper payment request is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) The due date for payment of any amounts retained by the Contracting Officer in accordance with the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts, shall be as specified in the contract or, if not specified, 30 days after approval for release to the Contractor by the Contracting Officer.

(ii) Final payments based on completion and acceptance of all work and presentation of release of all claims against the Government arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Government (e.g., each separate building, public work, or other division of the contract for which the price is stated seperately in the contract):

(A) The due date for making such payments shall be either the 30th day after receipt by the designated billing office of a proper invoice from the Contractor, or the 30th day after Government acceptance of the work or services completed by the Contractor, whichever is later. However, if the designated billing office fails to annotate the invoice with the date of actual receipt, the invoice payment due date shall be deemed to be the 30th day after the date the Contractor's invoice is dated, provided a proper invoice is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) On a final invoice where the payment amount is subject to

contract settlement actions (e.g., release of claims), acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(2) An invoice is the Contractor's bill or written request for payment under the contract for work or services performed under the contract. An invoice shall be prepared and submitted to the designated billing office. A proper invoice must include the items listed in subdivisions (a)(2)(i) through (a)(2)(ix) of this clause. If the invoice does not comply with these requirements, the Contractor will be notified of the defect within 7 days after receipt of the invoice at the designated billing office. Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in the manner described in subparagraph (a)(4) of this clause:

(i) Name and address of the Contractor.

(ii) Invoice date.

(iii) Contract number or other authorization for work or services performed (including order number and contract line item number).

(iv) Description of work or services performed.

(v) Delivery and payment terms (e.g., prompt payment discount terms).

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number, and mailing address of person to be notified in event of a defective invoice.

(viii) For payments described in subdivision (a)(1)(i) of this clause, substantiation of the amounts requested and certification in accordance with the requirements of the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts.

(ix) Any other information or documentation required by the contract.

(3) An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the conditions listed in subdivisions (a)(3)(i) through (a)(3)(iii) of this clause are met, if applicable.

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Government documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount.

(iii) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, the amount was not subject to further contract settlement actions between the Government and the

Contractor.

(4) The interest penalty shall be at the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority. This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1 and July 1. The interest penalty shall accrue daily on the invoice payment amount approved by the Government and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the periods prescribed in subparagraph (a)(2) of this clause, then the due date on the corrected invoice will be adjusted by subtracting the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties, if requested by the Contractor.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in subdivision (a)(1)(ii) of this clause, Government acceptance or approval shall be deemed to have occurred constructively on the 7th day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements do not apply if there is a disagreement over quantity, quality, or Contractor compliance with a contract provision. These requirements also do not compel Government officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to fulfilling their responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The period taken to notify the Contractor of defects in invoices submitted to the Government, but this may not exceed 7 days.

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(iii) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the clause at 52.233-1, Disputes, or for more than 1 year. Interest penalties of less than $1.00 need not be paid.

(iv) Interest penalties are not required on payment delays due to disagreement between the Government and Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233-1, Disputes.

(5) An interest penalty shall also be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

(6) If this contract was awarded on or after October 1, 1989, a penalty amount, calculated in accordance with regulations issued by the Office of Management and Budget, shall be paid in addition to the interest penalty amount if the Contractor--

(i) Is owed an interest penalty;

(ii) Is not paid the interest penalty within 10 days after the date the invoice amount is paid; and

(iii) Makes a written demand, not later than 40 days after the date the invoice amount is paid, that the agency pay such a penalty.

(b) Contract Financing Payments.

(1) For purposes of this clause, if applicable, "contract financing payment" means a Government disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Government, other than progress payments based on estimates of amount and value of work performed. Contract financing payments include advance payments and interim payments under cost-type contracts.

(2) If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made on the 30th day after receipt of a proper contract financing request by the designated billing office. In

the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified. For advance payments, loans, or other arrangements that do not involve recurrent submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer. Contract financing payments shall not be assessed an interest penalty for payment delays.

(c) The Contractor shall include in each subcontract for property or services (including a material supplier) for the purpose of performing this contract the following:

(1) A payment clause which obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract.

(2) An interest penalty clause which obligates the Contractor to pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause--

(i) For the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

(ii) Computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(3) A clause requiring each subcontractor to include a payment clause and an interest penalty clause conforming to the standards set forth in subparagraphs (c)(1) and (c)(2) of this clause in each of its subcontracts, and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

(d) The clauses required by paragraph (c) of this clause shall not be construed to impair the right of Contractor or a subcontractor at any tier to negotiate, and to include in their subcontract, provisions which--

(1) Permit the Contractor or a subcontractor to retain (without cause) a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with terms and conditions agreed to by the parties to the

subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

(2) Permit the Contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

(3) Permit such withholding without incurring any obligation to pay a late payment penalty if--

(i) A notice conforming to the standards of paragraph (g) of this clause has been previously furnished to the subcontractor; and

(ii) A copy of any notice issued by a Contractor pursuant to subdivision (d)(3)(i) of this clause has been furnished to the Contracting Officer.

(e) If a Contractor, after making a request for payment to the Government but before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractor is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall--

(1) Furnish to the subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but prior to the due date for subcontractor payment;

(2) Furnish to the Contracting Officer, as soon as practicable, a copy of the notice furnished to the subcontractor pursuant to subparagraph (e)(1) of this clause;

(3) Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph (e)(1) of this clause;

(4) Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and--

(i) Make such payment within--

(A) Seven days after correction of the identified subcontract performance deficiency (unless the funds therefor must be recovered from the Government because of a reduction under subdivision (e)(5)(i)) of this clause; or

(B) Seven days after the Contractor recovers such funds from the Government; or

(ii) Incur an obligation to pay a late payment interest penalty computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments

under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty;

(5) Notify the Contracting Officer upon--

(i) Reduction of the amount of any subsequent certified application for payment; or

(ii) Payment to the subcontractor of any withheld amounts of a progress payment, specifying--

(A) The amounts withheld under subparagraph (e)(1) of this clause; and

(B) The dates that such withholding began and ended; and

(6) Be obligated to pay to the Government an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903(c)(1)), from the 8th day after receipt of the withheld amounts from the Government until--

(i) The day the identified subcontractor performance deficiency is corrected; or

(ii) The date that any subsequent payment is reduced under subdivision (e)(5)(i) of this clause.

(f)(1) If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with section 2 of the Act of August 24, 1935 (40 U.S.C. 270b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable, and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, then the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph (e)(6) of this clause--

(i) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon making such determination; and

(ii) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under subdivision (f)(1)(i) of this clause.

(2) As soon as practicable, but not later than 7 days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected, the Contractor shall pay the amount withheld under subdivision (f)(1)(ii) of this clause to such

first-tier subcontractor, or shall incur an obligation to pay a late payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(g) A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying--

(1) The amount to be withheld;

(2) The specific causes for the withholding under the terms of the subcontract; and

(3) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

(h) The Contractor may not request payment from the Government of any amount withheld or retained in accordance with paragraph (d) of this clause until such time as the Contractor has determined and certified to the Contracting Officer that the subcontractor is entitled to the payment of such amount.

(i) A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph (c) of this clause does not constitute a dispute to which the United States is a party. The United States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

(j) Except as provided in paragraph (i) of this clause, this clause shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to the Contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

(k) The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph (c) of this clause shall not be construed to be an obligation of the United States for such interest penalty. A cost reimbursement claim may not include any amount for reimbursement of such interest penalty.

(End of clause)

57 52.233-1 DISPUTES (OCT 1995)

(a) This contract is subject to the Contract Disputes Act of 1978, as

amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph (d)(2) of this clause. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(2)(i) Contractors shall provide the certification specified in subparagraph (d)(2)(iii) of this clause when submitting any claim--

(A) Exceeding $100,000; or

(B) Regardless of the amount claimed, when using--

(1) Arbitration conducted pursuant to 5 U.S.C. 575-580; or

(2) Any other alternative means of dispute resolution (ADR) technique that the agency elects to handle in accordance with the Administrative Dispute Resolution Act (ADRA).

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows:

"I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duty authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use ADR. If the Contractor refuses an offer for alternative disputes resolution, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the request. When using arbitration conducted pursuant to 5 U.S.C. 575-580, or when using any other ADR technique that the agency elects to handle in accordance with the ADRA, any claim, regardless of amount, shall be accompanied by the certification described in subparagraph (d)(2)(iii) of this clause, and executed in accordance with subparagraph (d)(3) of this clause.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in (FAR) 48 CFR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(End of clause)

58 52.233-3 PROTEST AFTER AWARD (OCT 1995)
(Reference 33.106(b))

59 252.233-7000 CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF (MAY 1994)

(a) Any contract claim, request for equitable adjustment to contract

terms, request for relief under Pub. L. 85-804, or other similar request exceeding $100,000 shall bear, at the time of submission, the following certificate given by an individual who has knowledge of the basis of the claim or request, knowledge of the accuracy and completeness of the supporting data, and knowledge of the claim or request:

> I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

______________________________

(Official's Name)

______________________________

(Title)

(b) The certification in paragraph (a) of this clause requires full disclosure of all relevant facts, including cost and pricing data.

(c) The certification requirement in paragraph (a) of this clause does not apply to:

(1) Requests for routine contract payments; for example, those for payment for accepted supplies and services, routine vouchers under cost-reimbursement type contracts, and progress payment invoices; or

(2) Final adjustments under incentive provisions of contracts.

(d) In those situations where no claim certification for the purposes of 10 U.S.C. 2410e has been submitted prior to the inception of a contract dispute, a single certification, using the language prescribed by the Contract Disputes Act (41 U.S.C. 601 et seq.) but signed by an individual who is authorized to bind the contractor and who has knowledge of the basis of the claim or request, knowledge of the accuracy and completeness of the supporting data, and knowledge of the claim or request, will satisfy the certification requirements of both statutes.

(e) If this is a request for equitable adjustment under a substantially completed contract or a completed contract, the certification will be expanded to include the following:

> This claim includes only costs for performing the alleged change, and does not include any costs which have already been reimbursed or which have been separately claimed. All indirect

costs claimed are properly allocable to the alleged change in accordance with applicable acquisition regulations. I am aware that the submission of a false claim to the Government can result in the assessment of significant criminal and civil penalties and fines.

(End of clause)

60 52.236-2 DIFFERING SITE CONDITIONS (APR 1984)

(a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.

(b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

(c) No request by the Contractor for an equitable adjustment to the contract under this clause shall be allowed, unless the Contractor has given the written notice required; provided, that the time prescribed in (a) above for giving written notice may be extended by the Contracting Officer.

(d) No request by the Contractor for an equitable adjustment to the contract for differing site conditions shall be allowed if made after final payment under this contract.

(End of clause)

61 52.236-3 SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984)

(a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not

limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials; (2) the availability of labor, water, electric power, and roads; (3) uncertainties of weather, river stages, tides, or similar physical conditions at the site; (4) the conformation and conditions of the ground; and (5) the character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government.

(b) The Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government. Nor does the Government assume responsibility for any understanding reached or representation made concerning conditions which can affect the work by any of its officers or agents before the execution of this contract, unless that understanding or representation is expressly stated in this contract.

(End of clause)

62 52.236-5 MATERIAL AND WORKMANSHIP (APR 1984)

(a) All equipment, material, and articles incorporated into the work covered by this contract shall be new and of the most suitable grade for the purpose intended, unless otherwise specifically provided in this contract. References in the specifications to equipment, material, articles, or patented processes by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition. The Contractor may, at its option, use any equipment, material, article, or process that, in the judgment of the Contracting Officer, is equal to that named in the specifications, unless otherwise specifically provided in this contract.

(b) The Contractor shall obtain the Contracting Officer's approval of the machinery and mechanical and other equipment to be incorporated into

the work. When requesting approval, the Contractor shall furnish to the Contracting Officer the name of the manufacturer, the model number, and other information concerning the performance, capacity, nature, and rating of the machinery and mechanical and other equipment. When required by this contract or by the Contracting Officer, the Contractor shall also obtain the Contracting Officer's approval of the material or articles which the Contractor contemplates incorporating into the work. When requesting approval, the Contractor shall provide full information concerning the material or articles. When directed to do so, the Contractor shall submit samples for approval at the Contractor's expense, with all shipping charges prepaid. Machinery, equipment, material, and articles that do not have the required approval shall be installed or used at the risk of subsequent rejection.

(c) All work under this contract shall be performed in a skillful and workmanlike manner. The Contracting Officer may require, in writing, that the Contractor remove from the work any employee the Contracting Officer deems incompetent, careless, or otherwise objectionable.

(End of clause)

(R 7-602.9 1964 JUN)

63 52.236-6 SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the work site a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

(End of clause)

64 52.236-7 PERMITS AND RESPONSIBILITIES (NOV 1991)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any

completed unit of work which may have been accepted under the contract.

(End of clause)

65 52.236-8 OTHER CONTRACTS (APR 1984)

The Government may undertake or award other contracts for additional work at or near the site of the work under this contract. The Contractor shall fully cooperate with the other contractors and with Government employees and shall carefully adapt scheduling and performing the work under this contract to accommodate the additional work, heeding any direction that may be provided by the Contracting Officer. The Contractor shall not commit or permit any act that will interfere with the performance of work by any other contractor or by Government employees.

(End of clause)

66 52.236-9 PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984)

(a) The Contractor shall preserve and protect all structures, equipment, and vegetation (such as trees, shrubs, and grass) on or adjacent to the work site, which are not to be removed and which do not unreasonably interfere with the work required under this contract. The Contractor shall only remove trees when specifically authorized to do so, and shall avoid damaging vegetation that will remain in place. If any limbs or branches of trees are broken during contract performance, or by the careless operation of equipment, or by workmen, the Contractor shall trim those limbs or branches with a clean cut and paint the cut with a tree-pruning compound as directed by the Contracting Officer.

(b) The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site, and (2) on adjacent property of a third party, the locations of which are made known to or should be known by the Contractor. The Contractor shall repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, the Contracting Officer may have the necessary work performed and charge the cost to the Contractor.

(End of clause)

67 52.236-10 OPERATIONS AND STORAGE AREAS (APR 1984)

(a) The Contractor shall confine all operations (including storage of materials) on Government premises to areas authorized or approved by the Contracting Officer. The Contractor shall hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by the Contractor's performance.

(b) Temporary buildings (e.g., storage sheds, shops, offices) and utilities may be erected by the Contractor only with the approval of the Contracting Officer and shall be built with labor and materials furnished by the Contractor without expense to the Government. The temporary buildings and utilities shall remain the property of the Contractor and shall be removed by the Contractor at its expense upon completion of the work. With the written consent of the Contracting Officer, the buildings and utilities may be abandoned and need not be removed.

(c) The Contractor shall, under regulations prescribed by the Contracting Officer, use only established roadways, or use temporary roadways constructed by the Contractor when and as authorized by the Contracting Officer. When materials are transported in prosecuting the work, vehicles shall not be loaded beyond the loading capacity recommended by the manufacturer of the vehicle or prescribed by any Federal, State, or local law or regulation. When it is necessary to cross curbs or sidewalks, the Contractor shall protect them from damage. The Contractor shall repair or pay for the repair of any damaged curbs, sidewalks, or roads.

(End of clause)

68 52.236-11 USE AND POSSESSION PRIOR TO COMPLETION (APR 1984) (Reference 36.511)

69 52.236-12 CLEANING UP (APR 1984)

The Contractor shall at all times keep the work area, including storage areas, free from accumulations of waste materials. Before completing the work, the Contractor shall remove from the work and premises any rubbish, tools, scaffolding, equipment, and materials that are not the property of the Government. Upon completing the work, the Contractor shall leave the work area in a clean, neat, and orderly condition satisfactory to the Contracting Officer.

(End of clause)

70 52.236-13 I ACCIDENT PREVENTION (NOV 1991)--ALTERNATE I (NOV 1991)

(a) The Contractor shall provide and maintain work environments and procedures which will (1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities; (2) avoid interruptions of Government operations and delays in project completion dates; and (3) control costs in the performance of this contract.

(b) For these purposes on contracts for construction or dismantling, demolition, or removal of improvements, the Contractor shall--

(1) Provide appropriate safety barricades, signs, and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for the purposes are taken.

(c) If this contract is for construction or dismantling, demolition or removal of improvements with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the latest version of U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1, in effect on the date of the solicitation.

(d) Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Contractor or the Contractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Contractor shall not be entitled to any equitable adjustment of the contract price or extension of the performance schedule on any stop work order issued under this clause.

(e) The Contractor shall insert this clause, including this paragraph (e), with appropriate changes in the designation of the parties, in subcontracts.

(f) Before commencing the work, the Contractor shall--

(1) Submit a written proposed plan for implementing this clause. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in contract work performance and a plan for controlling these hazards; and

(2) Meet with representatives of the Contracting Officer to discuss and develop a mutual understanding relative to administration of the overall safety program.

(End of clause)

| | | |
|---|---|---|
| 71 | 52.236-26 | PRECONSTRUCTION CONFERENCE (FEB 1995) (Reference 36.522) |
| 72 | 252.236-7000 | MODIFICATION PROPOSALS--PRICE BREAKDOWN (DEC 1991) (Reference 36.570(a)) |
| 73 | 52.242-13 | BANKRUPTCY (JUL 1995) (Reference 42.903) |
| 74 | 52.243-4 | CHANGES (AUG 1987) |

(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes--

(1) In the specifications (including drawings and designs);

(2) In the method or manner of performance of the work;

(3) In the Government-furnished facilities, equipment, materials, services, or site; or

(4) Directing acceleration in the performance of the work.

(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating (1) the date, circumstances, and source of the order and (2) that the Contractor regards the order as a change order.

(c) Except as provided in this clause, no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order,

the Contracting Officer shall make an equitable adjustment and modify the contract in writing. However, except for an adjustment based on defective specifications, no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required. In the case of defective specifications for which the Government is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with the defective specifications.

(e) The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting to the Contracting Officer a written statement describing the general nature and amount of the proposal, unless this period is extended by the Government. The statement of proposal for adjustment may be included in the notice under paragraph (b) above.

(f) No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract.

(End of clause)

75 252.243-7001 PRICING OF CONTRACT MODIFICATIONS (DEC 1991)
(Reference 43.205-71)

76 52.244-1 SUBCONTRACTS (FIXED-PRICE CONTRACTS) (FEB 1995)
(Reference 44.204(a)(1)

77 52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS (OCT 1995)

(a) Definition.

"Commercial item," as used in this clause, has the meaning contained in the clause at 52.202-1, Definitions.

"Subcontract," as used in this clause, includes a transfer of commercial items between divisions, subsidiaries, or affiliates of the Contractor or subcontractor at any tier.

(b) To the maximum extent practicable, the Contractor shall incorporate, and require its subcontractors at all tiers to incorporate, commercial items or nondevelopmental items as components of items to be supplied under this contract.

(c) Notwithstanding any other clause of this contract, the Contractor is not required to include any FAR provision or clause, other than those listed below to the extent they are applicable and as may be required to establish the reasonableness of prices under Part 15, in a subcontract at

any tier for commercial items or commercial components:

(1) 52.222-26, Equal Opportunity (E.O. 11246);

(2) 52.222-35, Affirmative Action for Special Disabled and Vietnam Era Veterans (38 U.S.C. 4212(a));

(3) 52.222-36, Affirmative Action for Handicapped Workers (29 U.S.C. 793); and

(4) 52.247-64, Preference for Privately Owned U.S.-Flagged Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996).

(d) The Contractor shall include the terms of this clause, including this paragraph (d), in subcontracts awarded under this contract.

(End of clause)

78 252.247-7023 TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995)

(a) Definitions. As used in this clause--

(1) "Components" means articles, materials, and supplies incorporated directly into end products at any level of manufacture, fabrication, or assembly by the Contractor or any subcontractor.

(2) "Department of Defense (DoD)" means the Army, Navy, Air Force, Marine Corps, and defense agencies.

(3) "Foreign flag vessel" means any vessel that is not a U.S.-flag vessel.

(4) "Ocean transportation" means any transportation aboard a ship, vessel, boat, barge, or ferry through international waters.

(5) "Subcontractor" means a supplier, materialman, distributor, or vendor at any level below the prime contractor whose contractual obligation to perform results from, or is conditioned upon, award of the prime contract and who is performing any part of the work or other requirement of the prime contract. However, effective May 1, 1996, the term does not include a supplier, materialman, distributor, or vendor of commercial items or commercial components.

(6) "Supplies" means all property, except land and interests in land, that is clearly identifiable for eventual use by or owned by the DoD at the time of transportation by sea.

(i) An item is clearly identifiable for eventual use by the DoD if, for example, the contract documentation contains a reference to a DoD contract number or a military destination.

(ii) Supplies includes (but is not limited to) public works;

buildings and facilities; ships; floating equipment and vessels of every character, type, and description, with parts, subassemblies, accessories, and equipment; machine tools; material; equipment; stores of all kinds; end items; construction materials; and components of the foregoing.

(7) "U.S.-flag vessel" means a vessel of the United States or belonging to the United States, including any vessel registered or having national status under the laws of the United States.

(b) The Contractor shall employ U.S.-flag vessels in the transportation by sea of any supplies to be furnished in the performance of this contract. The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign-flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that--

(1) U.S.-flag vessels are not available for timely shipment;

(2) The freight charges are inordinately excessive or unreasonable; or

(3) Freight charges are higher than charges to private persons for transportation of like goods.

(c) The Contractor must submit any request for use of other than U.S.-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date necessary to meet its delivery schedules. The Contracting Officer will process requests submitted after such date(s) as expeditiously as possible, but the Contracting Officer's failure to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract. Requests shall contain at a minimum--

(1) Type, weight, and cube of cargo;

(2) Required shipping date;

(3) Special handling and discharge requirements;

(4) Loading and discharge points;

(5) Name of shipper and consignee;

(6) Prime contract number; and

(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile message or letters will be sufficient for this purpose.

(d) The Contractor shall, within 30 days after each shipment covered by this clause, provide the Contracting Officer and the Division of National Cargo, Office of Market Development, Maritime Administration, U.S. Department of Transportation, Washington, DC 20590, one copy of the rated on board vessel operating carrier's ocean bill of lading, which shall

contain the following information--

(1) Prime contract number;

(2) Name of vessel;

(3) Vessel flag of registry;

(4) Date of loading;

(5) Port of loading;

(6) Port of final discharge;

(7) Description of commodity;

(8) Gross weight in pounds and cubic feet if available;

(9) Total ocean freight in U.S. dollars; and

(10) Name of the steamship company.

(e) The Contractor agrees to provide with its final invoice under this contract a representation that to the best of its knowledge and belief--

(1) No ocean transportation was used in the performance of this contract;

(2) Ocean transportation was used and only U.S.-flag vessels were used for all ocean shipments under the contract;

(3) Ocean transportation was used, and the Contractor had the written consent of the Contracting Officer for all non-U.S.-flag ocean transportation; or

(4) Ocean transportation was used and some or all of the shipments were made on non-U.S.-flag vessels without the written consent of the Contracting Officer. The Contractor shall describe these shipments in the following format:

| | Item Description | Contract Line Items | Quantity |
|---|---|---|---|
| Total........ | | | |

(f) If the final invoice does not include the required representation, the Government will reject and return it to the Contractor as an improper invoice for the purposes of the Prompt Payment clause of this contract. In the event there has been unauthorized use of non-U.S.-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use.

(g) The Contractor shall include this clause, including this paragraph (g) in all subcontracts under this contract, which exceed the simplified

acquisition threshold in Part 13 of the Federal Acquisition Regulation.

(End of clause)

79 252.247-7024 NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995)

(a) The Contractor has indicated by the response to the solicitation provision, Representation of Extent of Transportation by Sea, that it did not anticipate transporting by sea any supplies. If, however, after the award of this contract, the Contractor learns that supplies, as defined in the Transportation of Supplies by Sea clause of this contract, will be transported by sea, the Contractor--

(1) Shall notify the Contracting Officer of that fact; and

(2) Hereby agrees to comply with all the terms and conditions of the Transportation of Supplies by Sea clause of this contract.

(b) The Contractor shall include this clause, including this paragraph (b), revised as necessary to reflect the relationship of the contracting parties, in all subcontracts hereunder, except (effective May 1, 1996) subcontracts for the acquisition of commercial items or components.

(End of clause)

80 52.248-3 I VALUE ENGINEERING--CONSTRUCTION (MAR 1989)--ALTERNATE I (APR 1984) (Reference 48.202)

81 52.249-2 I TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)--ALTERNATE I (APR 1984) (Reference 49.502(b)(1)

82 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)

(a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the

work is terminated. This liability includes any increased costs incurred by the Government in completing the work.

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if-

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (i) acts of God or of the public enemy, (ii) acts of the Government in either its sovereign or contractual capacity, (iii) acts of another Contractor in the performance of a contract with the Government, (iv) fires, (v) floods, (vi) epidemics, (vii) quarantine restrictions, (viii) strikes, (ix) freight embargoes, (x) unusually severe weather, or (xi) delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

(2) The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action, the time for completing the work shall be extended. The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the Disputes clause.

(c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government.

(d) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)

83 52.252-6 AUTHORIZED DEVIATIONS IN CLAUSES (APR 1984)

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(b) The use in this solicitation or contract of any FAR FAR (48 CFR 1 ) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of clause)

(NM)

84 52.253-1 COMPUTER GENERATED FORMS (JAN 1991)
(Reference 53.111)

*END OF SECTION 00700*