SECTION 01000

GENERAL


| Par. No. | Description | Page No. |
|---|---|---|
| 1 | NOT USED | 01000-1 |
| 2 | ORGANIZATION OF TECHNICAL SPECIFICATION SECTIONS | 01000-1 |
| 3 | REFERENCE STANDARDS | 01000-1 |
| 4 | NOT USED | 01000-1 |
| 5 | NOT USED | 01000-1 |
| 6 | GROUNDS AND ROADWAYS | 01000-1 |
| 7 | DISPOSAL OF DEBRIS AND WASTE | 01000-1 |
| 8 | NOT USED | 01000-2 |
| 9 | NOT USED | 01000-2 |
| 10 | SURVEYS | 01000-2 |
| 11 | SCHEDULING | 01000-3 |
| 12 | CONSTRUCTION RESTRICTIONS | 01000-3 |
| 13 | WORK PERFORMED BY OTHERS | 01000-5 |
| 14 | DAMAGE TO WORK | 01000-5 |
| 15 | NOT USED | 01000-6 |
| 16 | PROJECT CONSTRUCTION SIGN | 01000-6 |
| 17 | PROJECT SAFETY SIGN | 01000-6 |
| 18 | NO ACCESS TO SITE SIGN | 01000-6 |
| 19 | FLOATING PLANT EQUIPMENT AND PERSONNEL | 01000-6 |
| 20 | SEWAGE AND BILGE WATER DISPOSAL | 01000-6 |

GENERAL (CONTINUED)


| Par. No. | Description | Page No. |
|---|---|---|
| 21 | PAYMENT | 01000-7 |
| | PERMIT FOR DREDGED MATERIAL PLACEMENT | |
| | SUPPLEMENTAL INFORMATION AND DATA LETTERS DATED APRIL 17, 1996 AND MAY 2, 1996 | |
| | CONSTRUCTION SIGN (CORPS OF ENGINEERS DESIGN) | |
| | CONSTRUCTION PROJECT SIGN | |
| | SAFETY SIGN | |

# SECTION 01000 - GENERAL

1. NOT USED.

2. ORGANIZATION OF TECHNICAL SPECIFICATION SECTIONS. The technical requirements specification sections which govern the materials and equipment to be furnished and the work to be performed under this contract are listed in the Table of Contents. No attempt has been made in these sections to segregate work to be performed by any trade or subcontractor. Any segregation between the trades or crafts shall be solely a matter for agreement between the Contractor and the Contractor's employees and subcontractors.

3. REFERENCE STANDARDS. Reference to the standards, specifications, or codes of any technical society, organization, or association, or of local, State or Federal authorities shall mean the latest standard, specification, or code adopted and published at the date of bid opening, unless specifically stated otherwise.

4. NOT USED.

5. NOT USED.

6. GROUNDS AND ROADWAYS.

6.1 Grounds.

6.1.1 Availability. The boundary limits of the grounds made available for the Contractor's use during the life of the contract are shown on the drawings. Any additional rights-of-way or grounds desired by the Contractor shall be obtained by the Contractor at its own expense, and copies of agreements for the use of such rights-of-way shall be submitted to the Contracting Officer before entering thereon. Such agreements shall clearly relieve the Government of any responsibility for damages resulting from the use of the grounds.

6.2 Roadways.

6.2.1 Traffic hazards. When continuous haul operations or other conditions created by the Contractor's operations result in interference or hazard to traffic on streets and highways, beyond that of ordinary public usage, the Contractor shall erect warning signs and provide flagging services as necessary to safeguard the public.

6.2.2 Haul routes. The Contractor shall be responsible for securing all permits required along haul routes. A copy of each permit shall be submitted to each respective route owner (city, county, state) through Contracting Officer, for review and approval by the route owner. As between the Government and the Contractor, the Contractor shall be responsible for the cost of restoration of haul routes to preconstruction conditions. Dust control shall be provided in accordance with SECTION - ENVIRONMENTAL PROTECTION.

7. DISPOSAL OF DEBRIS AND WASTE. The Contractor's attention is directed to SECTION - ENVIRONMENTAL PROTECTION and to the following CONTRACT CLAUSES: PERMITS AND RESPONSIBILITIES; PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT UTILITIES, AND IMPROVEMENTS; OPERATIONS AND STORAGE AREAS; and CLEANING UP.

7.1 Burning. Burning will not be permitted within the work limits shown. Unless required otherwise, no debris or waste shall be left within the contract

project work limits. Removal of combustible debris to an off-site location for open burning or permanent storage may be allowed by permit. The Contractor shall be responsible for obtaining permit(s).

7.2 Disposal Of Debris And Waste. Disposal of debris and waste shall be as follows:

7.2.1 Disposal off-site in area selected by the Contractor. In the interest of conservation, the Contractor shall make a reasonable effort to dispose of debris and waste material off-site for some useful purpose.

7.3 Contractor Selected Final Disposal Areas (Placement Sites). The Contractor may dispose the transferred existing dredged material fill upon private property provided a copy of each agreement between the landowner(s) and the Contractor is submitted to and approved by the Contracting Officer. The agreement shall give the Contractor explicit permission for such disposal and shall clearly define the terms under which disposal is allowed such as types of material, site grading, and drainage provisions. No disposal (placement) will be allowed in a wetland or wooded area. Approval or disapproval of each proposed final disposal area (placement site) will require a minimum of 30 calendar days for review. The use of an optional final disposal area (placement site) may require the Government to prepare an environmental assessment (including a cultural resource survey). Preparation of an assessment would entail additional cost to the Government and may result in additional requirements to offset environmental impacts associated with the use of the area (site).

8. NOT USED.

9. NOT USED.

10. SURVEYS.

10.1 Layout. The Contractor shall layout its work from the Government established benchmarks in accordance with CONTRACT CLAUSES: LAYOUT OF WORK.

10.1.1 The Contractor shall have in place, at least seven calendar days prior to commencing contract project excavation operations, sufficient stakes to enable the Contracting Officer to: verify the proposed excavation limits for each existing dredged material pile site; mark trees/vegetation to be left undisturbed; and define the areal limits. For each existing dredged material pile site, these stakes shall define access locations, outermost cut limits, limits of each staging area, limits of each storage area, work limits, and/or other areal limits as directed such that the Contracting Officer can determine, without additional surveys, if limits adjustments need to be made. The Contracting Officer may waive these requirements for certain areas. No contract project work shall take place without prior approval of all the limits by the Contracting Officer.

10.1.2 Limits. The Government reserves the right to make changes in the limits of each feature of the contract project work as may be found necessary before completion of such work. If it becomes necessary, through no fault of the Contractor, to abandon any line or location on which contract project work has been performed, payment for material(s) placed will be made in accordance with the respective measurement and payment paragraph of the technical specification section to which the work pertains. No changes in limits shall take place without prior written notice from the Contracting Officer.

10.2 Quantity Surveys. The Contractor shall perform quantity and tolerance

verification surveys for all features of the contract project work in accordance with CONTRACT CLAUSES: QUANTITY SURVEYS. Areas, where payment for material is required by volume, shall be surveyed by the Contractor prior to commencement of contract project excavation of each dredged material pile site and also upon completion of each dredged material pile site; both surveys shall be completed in enough detail to accurately determine the required measurement and payment quantities and to verify the required cross-sections. Unless directed otherwise in writing by the Contracting Officer, the Contractor shall provide cross-sections at 100 foot intervals to verify pre-construction and post-construction cross-sections and conditions. The Contractor shall also plot each cross-section from the survey notes at a scale of 1 inch scale equals 10 feet actual and submit a copy of the survey notes and cross-sections to the Contracting Officer within 10 calendar days after completion of each survey.

10.2.1 The Contractor shall be responsible for performing, at no additional cost to the Government, additional surveys required when the Contractor requests partial payment for completed contract project work.

11. SCHEDULING.

11.1 General. It shall be the responsibility of the Contractor to schedule and execute the work, incorporating the necessary requirements set forth in the contract documents. Following are some of the major considerations in project work scheduling.

11.2 All contract operations affected by river stages shall be scheduled to take into consideration the river stages as indicated by the hydrological data reference in the contract documents. Hydrographic data is included with the contract documents as reference drawings.

12. CONSTRUCTION RESTRICTIONS.

12.1 Stockpiling Materials. The Contractor shall stockpile materials in the location(s) and quantities as approved. Stockpiled material(s) shall be removed from within the contract project work limits unless directed otherwise in writing, by the Contracting Officer.

12.2 Wisconsin One Call Excavation Notice System: For contract work performed within the State of Wisconsin, the Contractor shall meet the requirements of the Wisconsin Statute 182.0175. The following is the current notification center telephone number set up to assist the Contractor in complying with the above system:

Diggers Hotline:
State-wide 800-242-8511

12.3 Alma Marina's Access Area. The Alma Marina's access area on the left bank of the Mississippi River at Alma, Wisconsin will be available for use as the Contractor's unloading/loading area for the transferring of material required for the contract project work. The Contractor may utilize a different private loading area provided a copy of the agreement between the property/land owner and the Contractor is submitted to and approved by the Contracting Officer. The agreement shall give the Contractor explicit permission for such unloading/loading operations and shall clearly define the terms under which such operations are allowed.

12.4 Additional Plant And Equipment.

12.4.1 Floating plant utilized to complete the contract project work shall be equipped with radios to provide for communications between the Contractor's floating plant and other passing floating vessels. The Contractor shall monitor marine radio channels 13 and 16 and provide to passing floating vessels: timely information on delays and all other situations created by its work; and recommended passing instructions.

12.4.2 The Contractor shall furnish one motorized boat to transport Government personnel to and from points on shore to the existing Grand Encampment Dredged Material Pile site, as indicated, for inspection, final examination, and acceptance of the work at that site. The boat shall be operated with an experienced operator and shall be of sound construction, of adequate buoyancy, and conform to the applicable requirements of the Corps of Engineers Safety and Health Requirements Manual referenced in the CONTRACT CLAUSES.

12.5 Special Use Permit. The Contractor shall comply with the requirements of the "PERMIT FOR DREDGED MATERIAL PLACEMENT", included at the end of this section, regarding the Contractor's final disposal (placement) of transferred dredged fill material to the identified sites owned by Buffalo County, Wisconsin.

12.6 Supplemental Information And Data Letters. Included at the end of this section are two letters pertaining to this project: the first letter is a supplemental information and data letter dated April 17, 1996 from Robert J. Whiting at the Corps of Engineers to Ms. Lynn Lewis at the Fish and Wildlife Service; and the second letter is the response (to the first letter) dated May 2, 1996 from Ms. Lynn Lewis to Mr. Robert J. Whiting. The Contractor is responsible for reviewing the content of these referenced letters for pertinent information and data that could be applicable to the contract project work and for complying with same. If there are any specific differences between one or more items of these letters and the requirements presented in the rest of the contract documents, the requirements in the rest of the contract documents are to be considered the prevailing requirements of this contract.

12.7 Use of Mandatory Existing Borrow/Stockpile And Final Disposal Areas (Placement Sites). Unless directed otherwise, the Contractor shall remove borrow/stockpile fill material in accordance with the priority and other requirements as follows:

| Fill Type | Priority | Borrow/Stockpile Area | Final Disposal Area (Placement Site) | Notes |
|---|---|---|---|---|
| Sandy | First | Alma Marina No. 1 | Buffalo County No. 1 Placement Site | (a) |
| Sandy | Second | Grand Encampment Dredged Material Pile | Buffalo County No. 1 Placement Site | (a) |

Notes:

(a) The Contractor shall continue disposing of transferred dredged material fill at the mandatory "Buffalo County No. 1 Placement Site" until the required capacity (volume) of fill for this site has been achieved as determined by the Contracting Officer; the Contractor must complete reaching this capacity at this mandatory site before October 15, 1996. The estimated maximum capacity for this mandatory site is approximately 25,000 cubic yards (loose). All material must be placed within the limit lines established in the field by the placement site owner and as approved. After this mandatory site has been determined (by the Contracting Officer) filled to the above maximum capacity, the Contractor may utilize one or more of the other indicated non-mandatory final placement sites and/or the Contractor's own selected disposal areas (placement sites), as approved.

13. WORK PERFORMED BY OTHERS.

13.1 General. The Contractor shall coordinate with other contractors in the performance of the work and schedule such work to provide for a minimum of delays and interferences. Coordination shall be through the Contracting Officer.

13.2 Work Performed Under Separate Contract. Work listed below is currently under separate contract or is scheduled to be awarded as a separate contract prior to completion of work under this contract. These contracts will be considered in the application of CONTRACT CLAUSES: OTHER CONTRACTS.

(1) Hydraulic Maintenance Dredging, Mississippi and Minnesota Rivers, Minnesota, Wisconsin, and Iowa contract work is being performed by the U.S. Army Corps of Engineers, St. Paul District in 1996 and 1997.

(2) Mechanical Maintenance Dredging, Mississippi and Minnesota Rivers, Minnesota, Wisconsin, and Iowa contract work was awarded to L & S Industrial and Marine Incorporated, Hugo, Minnesota in the second quarter of 1996 and will be performed in 1996 and 1998.

14. DAMAGE TO WORK.

14.1 The responsibility for damages to any part of the work to be performed under this contract shall be as set forth in the CONTRACT CLAUSES: PERMITS AND RESPONSIBILITIES. However, if the permanent contract work is damaged by flood, earthquake, hurricane, or tornado, which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the contract work, the Contractor will make the repairs ordered by the Contracting Officer and full compensation for such repairs will be made at the applicable contract unit or lump sum prices as fixed and established in the contract documents. If, in the opinion of the

Contracting Officer, there are no contract unit or lump sum prices applicable to any part of such damaged work, an equitable adjustment will be made as full compensation therefor.

15. NOT USED.

16. PROJECT CONSTRUCTION SIGN. Upon commencement of work under this contract, the Contractor shall furnish and erect a project construction sign meeting the requirements of the "Construction Sign (Corps of Engineers)" sketch and the "Construction Project Sign" sketch included at the end of this section and in a location at the project site, as directed. The Contractor shall maintain the sign in good condition throughout the construction period and upon completion of the contract work remove the sign from the work site. All costs for erecting, maintaining, and removing the sign shall be a subsidiary obligation of the Contractor without separate payment. The Contractor shall incorporate the following information on the construction sign:

PROJECT DESCRIPTION:

OPERATION AND MAINTENANCE, MISSISSIPPI RIVER

PROJECT NAME:

GRAND ENCAMPMENT EXCAVATION
MISSISSIPPI RIVER, POOL 4
NEAR ALMA, WISCONSIN

17. PROJECT SAFETY SIGN. Upon commencement of work under this contract, the Contractor shall furnish and erect a project safety sign meeting the requirements of the "Safety Sign" sketch included at the end of this section and in a location at the project site, as directed. The Contractor shall maintain the sign in good condition throughout the construction period and upon completion of the contract work remove the sign from the work site. Removable numerals shall be furnished by the Contractor. All costs for erecting, maintaining, and removing the sign shall be a subsidiary obligation of the Contractor without separate payment.

18. NO ACCESS TO SITE SIGN. Upon commencement of work under this contract, the Contractor shall furnish and erect a "NO ACCESS TO SITE" sign in a location selected by the Contracting Officer at the project work site. The sign shall be constructed, painted and erected similar to the safety sign. Letters shall be a minimum of 2.5 inches in height. Dimensions of the sign shall not be greater than 3 feet by 3 feet. The Contractor shall maintain the sign in good condition throughout the construction period and upon completion of the contract work remove the sign from the contract work site. All costs for erecting, maintaining, and removing the sign shall be a subsidiary obligation of the Contractor without separate payment.

19. FLOATING PLANT EQUIPMENT AND PERSONNEL shall comply with the applicable U.S. Coast Guard regulations and licensing requirements. Floating plant equipment shall meet the applicable requirements of 46 CFR Chapter 1 Subchapter E and 46 CFR 44.05-10.

20. SEWAGE AND BILGE WATER DISPOSAL. The Contractor's methods for disposal of sanitary sewage and bilge water, accumulated aboard floating plant equipment, shall meet applicable local, state, and Federal requirements.

21. **PAYMENT**. No separate payment or direct payment will be made for the cost of the work covered under this section and such work will be considered as a subsidiary obligation of the Contractor.

* * * *

**PERMIT FOR**
**DREDGED MATERIAL PLACEMENT**

1. Buffalo County, P.O. Box 332, Alma, Wisconsin 54610, hereinafter referred to as the Grantor, hereby grants to the *United States of America*, its officers, agents, and employees, and its contractors, their agents and employees, hereinafter referred to as the Government, permission to enter upon and use the following-described land located in the County of Buffalo, State of Wisconsin, during a period of **two ( 2 ) years**, from and after the date of this instrument for the purpose of depositing material from dredging operations performed for operation and maintenance of the 9-foot channel projects on the Mississippi, Minnesota, and St. Croix Rivers. Legal description:

A parcel of land located in the W½SW¼ Sec. 25, T. 22 N., R. 13 W.;
A parcel of land located in the SW¼SW¼ Sec. 6, T. 23 N., R. 13 W.; and
A parcel of land located in the SE¼NE¼ Sec. 18, T. 22 N., R. 12 W.

2. Said material may be deposited on the above-described lands in such a manner as suits the convenience of the dredging operations without any obligation on the part of the Government to level or otherwise dress the spoil deposits.

3. All tools, equipment and other property taken upon or placed upon the land by the Government shall remain the property of the Government and may be removed by the Government at any time within a reasonable period after the expiration of this instrument.

4. The Grantor, owner of the above-described lands, in consideration of the benefits to be received hereunder, does hereby expressly and fully release and forever discharge the Government from all liability for any and all damage done or caused to be done, and does hereby agree to hold and save said Government free and harmless from any and all claims and demands whatsoever for any damage to the above-described land, or any improvements or personal property thereon, resulting from said dredging operations.

5. The granting of this permission, right, privilege, and license does not obligate the Government to perform any dredging operations for depositing of material upon the above-described property.

BUFFALO COUNTY, WISCONSIN

Date 4/18/96

[signature]
By David Bravick
Title Buffalo County Highway Commissioner

ACCEPTED:

UNITED STATES OF AMERICA

Date 4/22/96

By: [signature]
Mark W. Nelson
Chief, Real Estate Division

01000- 8

PE-M/Anderson
fn:encamp.end

**DEPARTMENT OF THE ARMY**
ST. PAUL DISTRICT, CORPS OF ENGINEERS
ARMY CORPS OF ENGINEERS CENTRE
190 FIFTH STREET EAST
ST. PAUL, MN 55101-1638

REPLY TO
ATTENTION OF

April 17, 1996

Management and Evaluation Branch
Engineering and Planning Division

Ms. Lynn Lewis
Twin Cities Field Office
U.S. Fish and Wildlife Service
4101 East 80th Street
Bloomington, Minnesota 55420

Dear Ms. Lewis:

The St. Paul District, Corps of Engineers is planning to excavate the Grand Encampment temporary disposal site at river mile 756.5 on the left descending bank in pool 4 of the Upper Mississippi River. Around 350,000 cubic yards of old dredged material would be temporarily transferred to the Alma Marina beneficial use stockpile site at river mile 754.0 on the left descending bank in pool 4 of the Upper Mississippi River. From the Alma Marina site, the material would be hauled by trucks to two or more of five identified inland sites: Buffalo County Site 1, Buffalo County Site 2, Buffalo County Site 3, Martin Site, and Reglin Site. The contractor would be given the option to take the material to any of these sites, with the exception that the contractor would be required to place material at Buffalo County Site 1, up to the capacity of the site. The contractor would also be given the option to take the material to alternative sites. Any new sites the contractor identifies would be coordinated for potential impacts on endangered and threatened species at that time. The contract is scheduled to be awarded in late summer, with the contractor being allowed a year to complete the dredged material transfer.

The Grand Encampment disposal site consists of 8 acres of a confined sand disposal site, and the Alma Marina disposal site consists of 7 acres of an active beneficial use stockpile site. Buffalo County Site 1 is located north of Alma off of Highway 37 adjacent to the county highway maintenance yard (T.22N, R.13W., Section 25), approximately 3 miles from the transfer location. The site dimensions and capacity will depend on the ability of Buffalo County to acquire adjoining private property to the south and east. The existing site consists of a disturbed, unvegetated stockpile area for sand, gravel, and other road maintenance and construction material, covering an estimated 1 acre. The adjoining property to the south consists of a small, active agricultural field and surrounding hardwood hillside (total estimated to be around 1 acre). The property adjoining the

Printed on Recycled Paper

01000-9

county property to the east consists of an upland, forested hillside, estimated to be less than 0.5 acre. Buffalo County Site 2 is located north of Alma off County II near its junction with Highway 37 (T.22N., R.12W., Section 17). The site has limited capacity, less than 30,000 cubic yards. The site consists of a small, active borrow area and adjacent grasslands and sumac and young hardwood trees (total estimated to be around 1 acre). Buffalo County is located north of Nelson, Wisconsin, off of Highway 25 near the junction of County KK (T.23N., R.13W., Section 6), approximately 13 miles from the Alma Marina Site. This site consists of an active sand quarry, covering 2 to 3 acres. The Martin Site is a privately owned site located south of Alma off of County OO near its junction with the Burlington Northern Railroad (T.21N., R.12W., Section 30), approximately 6 miles from the transfer site. The site is a large abandoned sand quarry, with sparse vegetation, at least in the area proposed for filling. The owner would like to reclaim this area, and material placed here would remain and probably would be topsoiled. The site has the capacity for all the material. The Reglin Site is a privately owned site located south of Alma off of Belvidere Township's Foegen Road near its junction with the Burlington Northern Railroad (T.21N., R.12W., Section 32), approximately 7 miles from the transfer site. The site is an active sand quarry pit, in the middle of an agricultural field. The site would have the capacity for all the material from the Alma Marina transfer site, if the material were stacked above the surrounding ground and/or were expanded into the surrounding agricultural field.

In accordance with the Endangered Species Act, we wish to obtain your comments on the potential impacts of this project upon federally designated threatened and endangered species. Three federally protected species can be found in the general project area: the bald eagle (*Haliaetus leucocephalus*), the peregrine falcon (*Falco peregrinus*), and the Higgins' eye pearly mussel (*Lampsilis higginsi*). The peregrine falcon is distributed throughout North America. It nests primarily on cliffs, sides of buttes, slopes and riverbanks, occasionally in trees and man-made structures. The peregrine falcon is known to breed within the project area, but is more common during migration. No known nesting sites are located within the general project vicinity that could be affected by the proposed project. The Higgins' eye pearly mussel has not been recorded in recent times in lower pool 4 or in adjoining pools. No in-water fill or disposal activities are being proposed; therefore, there should be no impacts on *L. higginsi*. Bald eagles also use the general project area for breeding and migration. Construction-related impacts could potentially affect short-term use of the area by bald eagles. An active bald eagle nesting site is located around 0.5 mile northeast of the Grand Encampment disposal site. According to Mr. Eric Nelson from the Upper Mississippi River National Wildlife and Fish Refuge, the nest is being used this spring and the nest has previously produced fledglings over a number of years. The distance between disposal site and nesting

site, 0.5 mile, is right on the border of the maximum tertiary buffer zone (normally 0.25 to 0.5 mile) recommended by the Minnesota Department of Natural Resources in its Management Guidelines for Bald Eagle Breeding Areas. Most of the activities associated with excavation of the Grand Encampment disposal site would be confined to the area along the main channel border and would be screened from the eagle nesting site by a series of barrier islands. The highly disturbed nature of the Grand Encampment site, which has actively been used for the past 20 years, indicates the probability of affecting the bald eagle nesting site by excavation at Grand Encampment is low. However, to minimize any potential disturbance to this nesting pair, no activities associated with the excavation at Grand Encampment will be permitted from February 10 to April 15. After April 15, commercial navigation and other uses of the river increase substantially, and the incremental increase in activity from excavation at Grand Encampment is not likely to disturb this nesting pair. No known eagle nesting sites are located close to any of the other proposed disposal sites. It is the St. Paul District's determination that there would be no project related impacts to the Higgins' eye pearly mussel, the peregrine falcon, or the bald eagle (with the avoidance measures being implemented).

We would appreciate receiving your comments on our determination. If you have any questions or comments regarding this project, please contact Mr. Dennis Anderson at 290-5272.

Sincerely,

/S/

Robert J. Whiting
Chief, Environmental Resources Section
Management and Evaluation Branch

01000-11

United States Department of the Interior

FISH AND WILDLIFE SERVICE
Twin Cities Field Office
4101 East 80th Street
Bloomington, Minnesota 55425-1665

IN REPLY REFER TO:
FWS/AFWE-TCFO

MAY

Mr. Robert J. Whiting
Chief, Environmental Resources Section
St. Paul District
U.S. Army Corps of Engineers
190 Fifth Street East
St. Paul, Minnesota 55101-1638

Dear Mr. Whiting:

This responds to your April 17, 1996, letter regarding the proposal to excavate the Grand Encampment disposal site in Buffalo County, Minnesota.

We have reviewed the information included with your letter and provide the following comments for your consideration.

Endangered Species Comments

Under Section 7(c) of the Endangered Species Act, Federal agencies are required to obtain information from the Fish and Wildlife Service concerning any species, listed or proposed to be listed, which may be present in the area of a proposed action. Therefore, we are sending you the following list of species which may be present in the concerned area:

Bald eagle (*Haliaeetus leucocephalus*)

Peregrine falcon (*Falco peregrinus*)

Higgins' eye pearly mussel (*Lampsilis higginsii*)

There is no designated critical habitat in the project area.

The nature of the subject project indicates that diurnal perches, roost sites, food sources, or other preferred habitat will not be affected. Therefore, we concur with your determination that the project will not affect the bald eagle or the peregrine falcon. Further, with no in-water fill proposed and with no excavation planned in endangered mussel habitat, the project is not likely to adversely affect the Higgins' eye pearly mussel.

This precludes further action on this project as required under Section 7 of the Endangered Species Act of 1973, as amended. Should this project be modified or new information indicate endangered species may be affected, consultation should be reinitiated.

01000-12

Mr. Robert J. Whiting 2.

We appreciate this opportunity to provide our comments. If you have any questions or if we can be of further assistance, please contact Paul Burke, of this office, by calling (612) 725-3548.

Sincerely,

Lynn Lewis

Lynn Lewis
Field Supervisor

01000-13

The graphic format for this 4'x6' sign panel follows the legend guidelines and layout as specified below. The large 4' x 4' section of the panel on the right is to be white with black legend. A 2' x 4' decal provided by the Corps shall be placed on the left side of the sign panel.




Project Description:
One to three line project title legend describes the work being done under this contract.

Color: Black
Typeface: 3" Helvetica Bold
Maximum line length: 42"

Project Name:
One to three line identification of project or facility (civil works) or name of sponsoring department (military).

Color: Black
Typeface: 1.5" Helvetica Bold
Maximum line length: 42"

Cross-align the first line of Project Name with the first line of the Corps Signature (US Army Corps) as shown.

Contractor:
One to five line identification of prime contractors including: type (architect, general contractor, etc.), corporate or firm name, city, state.

Color: Black
Typeface: 1.25" Helvetica Regular
Maximum line length: 21"

All typography is flush left and ragged right, upper and lower case with initial capitals only as shown. Letter and word spacing to follow Corps standards.

| Sign Type | Legend Size | Panel Size | Post Size | Specification Code | Mounting Height | Color 3kg/Lgd |
|---|---|---|---|---|---|---|
| CID-01 | various | 4'x6' | 4"x4" | HOO-3 | 48" | WH-RD/BK |

CONSTRUCTION SIGN (CORPS OF ENGINEERS DESIGN)

# Construction Project Sign




01000-15

# SAFETY SIGN

Each contractor's safety record is to be posted on Corps managed or supervised construction projects and mounted with the construction project identification sign

The graphic format, color, size and type-faces used on the sign are to be reproduced exactly as specified below.

The title with First Aid logo in the top section of the sign, and the performance record captions are standard for all signs of this type. Legend groups 2 and 3 below identify the project and the contractor and are to be placed on the sign as shown.

Safety record numbers are mounted on individual metal plates and are screw-mounted to the background to allow for daily revisions to posted safety performance record.

Legend Group 1: Standard two-line title "Safety is a Job Requirement" with (8" od.) Safety Green First Aid logo.
Color: To match PMS 347
Typeface: 3" Helvetica Bold
Color: Black

Legend Group 2: One- to two-line project title legend describes the work being done under this contract and name of host project.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 3: One- to two-line identification: name of prime contractor and city, state address.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 4: Standard safety record captions as shown.
Color: Black
Typeface: 1.25" Helvetica Regular

Replaceable numbers are to be mounted on white .060 aluminum plates and screw-mounted to background.
Color: Black
Typeface: 3" Helvetica Regular
Plate size: 2.5" x 4.5"

All typography is flush left and rag right, upper and lower case with initial capitals only as shown.
Letter and word spacing to follow Corps standards




| Sign Type | Legend Size (A) | Panel Size | Post Size | Specification Code | Mounting Height | Color Bkg/Lgd |
|---|---|---|---|---|---|---|
| CID-02 | various | 4'x 4' | 4"x 4" | HDO-3 | 48" | WH/BK-SG |




01000-16