**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| L. W. MATTESON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) | Case No. 01-542C |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

**<u>INTERROGATORIES</u>**

<u>Interrogatory No. 1</u>: Identify each person who provided any information used in answering any of these interrogatories, and for each person identified, state for which answers that person provided information.

**ANSWER:**

Lawrence W. Matteson, President, L. W. Matteson, Inc.
Larry W. Matteson, Vice President, L. W. Matteson, Inc.
David Guiott, Former Project Manager, L. W. Matteson, Inc.
James Alber, Project Superintendent (retired), L. W. Matteson, Inc.
Kevin Burke, Former Project Manager, L. W. Matteson, Inc.
Kele A. Harris, Office Manager, L. W. Matteson, Inc.

<u>Interrogatory No. 2</u>: Identify each person whom you expect to call as an expert witness at the trial of this action, and with respect to each:

(a) State the subject matter upon which the witness is expected to testify;

(b) State the substance of the facts and opinions to which the expert is expected to testify;

MATTESON JR
EXHIBIT
7/24/02 42 [illegible]

(c) State a summary of the grounds for each opinion; and,

(d) Identify each document upon which the witness has relied or is expected to rely in forming any opinion to which the witness is expected to testify.

**ANSWER:**

Plaintiff has not yet identified its expert witnesses, and will supplement this response.

Interrogatory No. 3: Identify each person whom you expect to call as a fact witness at the trial of this action, and with respect to each:

(a) State the subject matter upon which the witness is expected to testify;

(b) State the substance of the facts to which the witness is expected to testify; and

(c) Identify each document regarding which the witness is expected to testify.

**ANSWER:**

Plaintiff objects to this interrogatory as seeking information that may be privileged and is protected by the work product doctrine.

Interrogatory No. 4: Identify every contract to which the plaintiff was a party during the period of Contract performance, and, for each contract identified, identify: (a) the contract price; (b) the overhead rate charged; (c) the profit or loss realized; and (d) every document that substantiates the information you provided in response to (a), (b), and (c).

**ANSWER:**

Contract No. DACW67-96-C-0060
Quillayute River Maintenance Dredging
Subcontractor to J. E. McAmis, Inc.
(a) Contract Price: $1,344,500.00

(b) Overhead Rate: 23.12%
(c) Plaintiff objects to this interrogatory not likely to lead to the discovery of admissible evidence nor relevant to any issues before this Court.
(d) 1995 Year-End Financial Statement

Contract No. DACW43-97-C-0402
Ditch Relocation, Chain of Rocks Canal
Subcontractor to Keller Construction, Inc.
(a) Contract Price: $2,322,000.00
(b) Overhead Rate: 31.09%
(c) Plaintiff objects to this interrogatory not likely to lead to the discovery of admissible evidence nor relevant to any issues before this Court.
(d) 1996 Year-End Financial Statement

Contract No. DACW37-97-C-0030
Lower Pool 3, Corps Island Excavation
Subcontractor to J. F. Brennan Co., Inc.
(a) Contract Price: $2,246,290.00
(b) Overhead Rate: 31.09%
(c) Plaintiff objects to this interrogatory not likely to lead to the discovery of admissible evidence nor relevant to any issues before this Court.
(d) 1996 Year-End Financial Statement

Interrogatory No. 5: Describe in detail all costs incurred in performing the Contract, and identify all costs that would not have been incurred had the Contractor used the Sanderson site as a disposal site in performing the Contract.

**ANSWER:**

At the time Matteson bid this Project, it had obtained an option to buy property owned by the Sanderson family at a cost of $90,000.00. That property was approximately 9,000 feet away from the stockpile site on the Minnesota side of the river. When local authorities blocked not only the placement of dredged material at the Sanderson site, but also the temporary placement of dredging pipe within 1,000 feet of the river, Matteson was ultimately left with the sole alternative of using a Fish & Wildlife-owed property at the end of Zumbro River Road as a disposal site, requiring Matteson to pump the dredged material over 26,000 feet, approximately three times farther than originally planned. This required the addition of two booster pumps and other equipment, and reduced production dramatically. In addition, Matteson was required to purchase another property of 80+ acres to donate to Fish & Wildlife in exchange for the use of the disposal site. The increased cost to Matteson was the substantially increased equipment cost to pump the material the much greater distance, the cost of decreased production to the project as a whole, the cost of the replacement

property to be donated Fish & Wildlife, in addition to the cost already expended in obtaining the option on the Saunderson property.

Interrogatory No. 6: Describe in detail any cost that the Contractor would have incurred, but did not incur, had it been able to use (a) the Sanderson site; (b) the Braun site; and (c) the Gusa site.

**ANSWER:**

Plaintiff objects to this Interrogatory as repetitive, and states that all such information available to Plaintiff is set forth in Plaintiff's Claim for Equitable Adjustment of July 31, 2000. Subject to this objection, Plaintiff states:

(a) Matteson had an option on the Sanderson property at $90,000.00, and would have been able to re-sell it at approximately a $40,000 loss following completion of the Project and after investing additional time and expense to prepare the property for re-sale;
(b) Matteson is unable to determine this cost as no option was purchased.
(c) Matteson is unable to determine this cost as no option was purchased.

Interrogatory No. 7: Describe in detail the basis for your allegation, set forth in paragraph 6 of the Complaint, that "[t]he Corps informed Matteson that hydraulic dredging was not only responsive to the bid solicitation, but encouraged Matteson to submit a bid based upon hydraulic dredging."

**ANSWER:**

Corps representatives visited the site to assist Matteson in determining if hydraulic dredging could be performed on this contract. The Corps representatives informed Matteson that hydraulic dredging was feasible and a preferred method of performance in this case. The Construction Project Documents for this Project incorporated a Value Engineering clause, 48.202, authorizing means and methods that would constitute a significant savings to the Corps. Having performed a number of contracts for the Corps in the past, Matteson was familiar with this policy on Corps projects.

Interrogatory No. 8: Identify the "two potential proposed disposal sites in the area" to which paragraph 7 of the Complaint refers.

**ANSWER:**

(a) Sanderson site,
(b) Gusa site

Interrogatory No. 9: Describe in detail the basis for your allegation, set forth in paragraph 8 of the Complaint, that "prior to the bid date, representatives of the Corps and state and federal conservation agencies visited Matteson's proposed sites to assess their suitability for the Project, "including the identity of the "proposed sites."

**ANSWER:**

On August 5, 1996, Larry Matteson, Jr. met with Dan Krumholz, Steve Tapp, Dennis Anderson, and a representative of the Minnesota Department of Natural Resources at the Braun property site to inspect and analyze that site as a potential disposal area. Other than a low wet area to the north and west, the site appeared acceptable to all present upon inspection. After the inspection, these individuals went north to the intersection where they inspected the Gusa property, which is on the north side of Highway 24. The Corps' representatives' initial reaction to this property was that it had no environmental problems and probably no archaeological problems. The Barton property, which was mentioned, is just across the road and to the south of the Gusa property. The Sanderson property was also discussed for these factors on August 5, 1996.

Interrogatory No. 10: Describe in detail the basis for your allegation, set forth in paragraph 10 of the Complaint, that "Mr. Krumholz, on behalf of the Corps, assured Matteson that either disposal sites could be used," including the identity of "either disposal site."

**ANSWER:**

Lawrence Matteson telephoned Dan Krumholz on August 30, 1996, the morning of the bid, to inquire whether Matteson should submit a bid using hydraulic dredging and using the proposed properties as disposal areas. Mr. Krumholz stated that he felt it would be appropriate to submit such a bid. Sites: Sanderson site, Gusa site.

Interrogatory No. 11: Describe in detail the basis for your allegation, set forth in paragraph 1 of the Complaint, that "Matteson obtained options from the property owners of the sites to purchase the proposed sites, "including the identity of the "property owners" and the "proposed sites."

**ANSWER:**

Matteson obtained an option from the owner of the Sanderson property to place dredged materials on that property. The purchase price of the Sanderson property was $90,000.00. Following completion of the Project, Matteson would have retained ownership of the property and would have had the right to sell it. Matteson also had a verbal option for $20,000.00 on the John Wooldridge property next to the Mississippi River to cross that land with the pipeline to reach the Sanderson property. Owners: Roland Sanderson and Sandra Sanderson; Darrel Gusa; John Wooldridge.

Interrogatory No. 12: Describe in detail the basis for your allegation, set forth in paragraph 19 of the Complaint, that, "Matteson was ultimately required to use a disposal site located by the Corps, which was owned by the Fish & Wildlife Service ("the Fish & Wildlife site"), at significantly greater cost to Matteson in equipment, materials and productivity than its original contract with the Corps, "including the identity of the "original contract."

**ANSWER:**

When Matteson first encountered local opposition to its use of the Saunderson site for disposal post-contractually, Dan Krumholz at the Corps recommended that Matteson contact the U.S. Department of Fish and Wildlife ("Fish and Wildlife") about using the Fish and Wildlife site at the end of ZumbroRiver Road ("the Fish and Wildlife property"). Lawrence Matteson, Sr. contacted Bob Drieslen at Fish and Wildlife, and spoke with him about laying a pipeline across the Fish & Wildlife property to access the Braun property. Lawrence Matteson also inquired of Drieslen about using the Fish & Wildlife property as a disposal site. Drieslen stated that Fish & Wildlife would consider this option if Matteson could not find an acceptable alternative.

When Matteson was informed that all of its potential sites were unacceptable, Lawrence Matteson, Sr. met with Bob Drieslen at Fish & Wildlife, where it was concluded that Matteson would be permitted to use the Fish & Wildlife property without

restriction by the County, on the stipulation that Matteson would purchase and donate to Fish & Wildlife a parcel of land that Fish & Wildlife wished to acquire.

Matteson first received an option on the Rose Peterson land for $245,000.00. However, when this property was rejected by Fish & Wildlife, Matteson obtained an option on the Barton property at the direction of Fish & Wildlife personnel. This option was purchased for $120,427.00, plus an agreement from Matteson to dig the topsoil from that area to cover the dredged sand and to create ponds for duck habitats.

Interrogatory No. 13: State the basis for each cause of action that the plaintiff contends is asserted by the allegations in the complaint.

subpart (a): For each cause of action stated in response to this interrogatory, state the dollar amount of the award to which the plaintiff contends it is entitled based upon that cause of action.

**ANSWER:**

Plaintiff objects to this Interrogatory as vague and unintelligible, and subject to this objection, states that its causes of action are fully set forth in its Claim for Equitable Adjustment, Amended Complaint and in the parties' Joint Preliminary Status Report, and that those documents speak for themselves. Subpart (a): Subject to the same objection, for each cause of action set forth in Plaintiff's Amended Complaint, Plaintiff is entitled to $1,111,227.51, plus costs, expenses, attorneys' fees, and pre- and post-judgment interest.

MILLER LAW FIRM, P.C.

Stephen R. Miller, Mo. Bar #33344
Diane S. Mills, Mo. Bar #50052
4310 Madison Avenue
Kansas City, Missouri 64111
Telephone: (816) 531-0755
Facsimile: (816) 561-6361

**ATTORNEYS FOR PLAINTIFF**

**AFFIDAVIT**

STATE OF Iowa )
) ss.
COUNTY OF Des Moines )

The below named person, being duly sworn on oath states that he or she has read the foregoing interrogatories and the answers given are true to the best of affiant's knowledge and belief.

Signature of Plaintiff

(NOT TO BE SIGNED BY ATTORNEY)

The foregoing answers to interrogatories were subscribed and sworn to before me this 27th day of February, 2002.

Notary Public

My Commission Expires:

10-01-02

TINA M. SNYDER
COMMISSION NUMBER 712847
MY COMMISSION EXPIRES:
10-1-02

NOTARIAL SEAL
IOWA