IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - - - - - - -

L.W. MATTESON, INC.,

Plaintiff,

vs. Case No. 01-542C

UNITED STATES ARMY CORPS OF ENGINEERS,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF: **MELISSA GULAN**

DATE: July 23, 2002

PLACE: Army Corps of Engineers Centre
190 Fifth Street East
St. Paul, MN

TIME: 2:43 p.m.

ORIGINAL

Teresa M. Schafer
Registered Merit Reporter
LOGAN AND STYRBICKI COURT REPORTERS
300 Degree of Honor Building
325 Cedar Street
St. Paul, Minnesota 55101
(651) 291-1095 FAX (651) 297-6884

August 8th?
A. Well, from this I'm guessing there was but --
Q. Do you have any recollection what occurred with that meeting?
A. No, I would have to review files.
(Whereupon, Deposition Exhibit No. 25 was marked for identification.)
BY MR. MILLER:
Q. Handing you Exhibit 25.
A. I hope there wasn't a smart alec in this one.
Q. It's a copy of an internal memorandum dated April 27th, 1998 that you prepared, is that correct?
A. Yes.
Q. What was your purpose in preparing this memorandum?
A. Give me a minute.
Q. Sure.
A. Okay, we had a meeting coming up and it was just to let the team know, give them my version of the background. There was a meeting on the 7th of August.
Q. I'm sorry, what are you referring to?
A. Oh, on the second page paragraph 5 going back to the previous exhibit.
A. Now I can answer your questions from the previous exhibit.

Q. Okay.
A. Was there a meeting, yes.
Q. Meeting was held on August 7th?
A. And was I there, yes. And as far as the determined that the Corps of Engineers wishing that it would not aid L.W. Matteson actually what it was that we would continue to facilitate the contractor's permit request but would not actually obtain permits for the contractor.
Q. Are you aware that it's the apparently the Corps's position that it had sovereign immunity and that it does not have to concern itself with local government laws, agencies, approvals?
A. Well, I've only had three credits of business law but the way I understand it the government has sovereign immunity and that's really as far as I know about that.
Q. Do you understand that the Corps is an agency of the federal government, at least some individuals at the St. Paul District have taken the position that sovereign immunity that the Corps enjoys and they do not have to concern themselves with such issues such as the shoreland ordinance in Wabasha County?
A. Well, that's not the way I understand it.
Q. Well, did the Corps when it did the Read's

Q. You're entitled not to like my questions.
A. I didn't say I didn't like your questions, I just said didn't make sense to me.
Q. Well, what steps did the Corps take to obtain authorization for the dredging pipe through the first thousand feet of shoreline for the Read's Landing?
A. I don't know.
MS. McCARTHY: Objection, asked and answered.
BY MR. MILLER:
Q. Is there any reason the same steps couldn't have been taken at Grand Encampment project which was only a year later?
MS. McCARTHY: Objection.
BY MR. MILLER:
Q. Go ahead.
A. Well, what she's saying is I don't really know.
MS. McCARTHY: No, no, no, no, I'm just making objection for the record. Answer to the best you can.
THE WITNESS: I would have no way to know if, you know, it wasn't just one year ahead it was probably three years ahead it was bid. It was -- and it wasn't the first time that pipeline route was used at Read's Landing. It had been used in 86-87 by