**NO. 01-542C**
**(JUDGE LAWRENCE J. BLOCK)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**L.W. MATTESON, INC.**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**PATRICIA M. McCARTHY**
**Assistant Director**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 307–0164**
**Fax: (202) 514-8640**

**Attorneys for Defendant**

**OF COUNSEL:**
**EDWIN C. BANKSTON**
**District Counsel**
**Army Corps of Engineers**
**Saint Paul, MN 55101**

**NOVEMBER 14, 2003**

# TABLE OF CONTENTS

**PAGE(S)**

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . 1

INTRODUCTION . . . . . . 1

ARGUMENT . . . . . . 6

I. Matteson Fails To Identify Any Factual Issue That Would Enable It To Establish A Breach Of Contract . . . . . . 6

A. Matteson Admits That It Was Paid The Full Contract Price . . . . . . 6

B. Matteson Fails To Establish A Superior Knowledge Claim As A Matter Of Law . . . . . . 7

C. Matteson Fails To Escape The Plain Language Of The Contract . . . . . . 10

II. Matteson Fails To Establish A Possible Differing Site Condition Claim . . . . . . 13

III. Matteson Cannot Establish A Changed Contract Condition As A Matter Of Law . . . . . . 14

IV. Matteson Cannot Establish Its Claims Of Impossibility Or Commercial Impracticability . . . . . . 15

V. Matteson Cannot Establish Its Claim Of Mutual Mistake As A Matter Of Law . . . . . . 17

CONCLUSION . . . . . . 19

# TABLE OF AUTHORITIES

**CASE** **PAGE(S)**

Ambrose-Augusterfer Corp. v. United States,
394 F.2d 536 (Ct. Cl. 1968) . . . . . . . . . . 16

American Dredging Co.,
ENGBCA No. 2920, 72-1 BCA ¶ 9316 (1972) . . . . . . . . . . 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 6, 18

Asco- Falcon II Shipping Co. v. United States,
18 Cl. Ct. 484, 491-92 (1989) . . . . . . . . . . 12

Briscoe v. United States,
442 F.2d 953 (Ct. Cl. 1971) . . . . . . . . . . 13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 6, 18

Delta Equipment & Construction Co. v. United States,
104 F. Supp. 549 (Ct. Cl. 1952) . . . . . . . . . . 9

Fehlhaber Corp. v. United States,
151 F. Supp. 817 (Ct. Cl. 1957) . . . . . . . . . . 11

Freedom NY,
329 F.2d at 1332 . . . . . . . . . . 15

Giesler v. United States,
232 F.3d 864 (Fed. Cir. 2000) . . . . . . . . . . 9

H.N. Bailey & Associates v. United States,
449 F.2d 376 (Ct. Cl. 1971) . . . . . . . . . . 9

J.A. Jones Construction Co. v. United States,
390 F.2d 886 (Ct. Cl. 1968) . . . . . . . . . . 9

Jarvis v. United States,
43 Fed. Cl. 529 (1999) . . . . . . . . . . 12, 13

**TABLE OF AUTHORITIES (con't)**

**CASE** **PAGE(S)**

John Massman Contracting Co. v. United States,
23 Cl. Ct. 24, 31 (1991) . . . . . . . . . . 9

McDowell Stone Co. of Blackwater,
BCA No. 285 (1943) . . . . . . . . . . 13

McNamara Construction of Manitoba, Ltd. v. United States,
509 F.2d 1166 (Ct. Cl. 1975) . . . . . . . . . . 17

Morris v. United States,
33 Fed. Cl. 733 (1995) . . . . . . . . . . 12

Price v. United States,
46 Fed. Cl. 640 (2000) . . . . . . . . . . 13

R.A. Heintz Construction Co., ENGBCA No. 3380,
74-1 B.C.A. ¶ 10,562 (1974) . . . . . . . . . . 13

State of Alaska v. United States,
35 Fed. Cl. 685 (1996) . . . . . . . . . . 13

Sundex, Ltd., ASBCA No. 42601,
93-2 B.C.A. ¶25,626 (1992) . . . . . . . . . . 14

Western Contracting Corp. v. United States,
144 Ct. Cl. 318 (1958) . . . . . . . . . . 6, 7

Western Empire Constructors, Inc. v. United States,
20 Cl. Ct. 668, 674 (1990) . . . . . . . . . . 16

## STATUTES AND REGULATIONS

**PAGE(S)**

48 C.F.R. §52.236-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

**DOCUMENT** **DEF. APP. PAGES**

Deposition of Daniel J. Krumholz (excerpts) . . . . . . . . . . 1280-1283

Matteson's resubsmittal of Environmental Protection Plan, dated August 12, 1998 . . . . . . . . . . 1284-1285

Matteson's resubsmittal of Environmental Protection Plan, dated November 14, 1996 . . . . . . . . . . 1286

Government's request for resubmittal of Environmental Protection Plan, dated November 19, 1996 . . . . . . . . . . 1287

Matteson's Environmental Protection Plan . . . . . . . . . . 1288-1290

Matteson's subsmittal of Environmental Protection Plan, dated October 4, 1996 . . . . . . . . . . 1291

Government's request for resubmittal of Environmental Protection Plan, dated October 21, 1996 . . . . . . . . . . 1292-1293

Matteson's Environmental Protection Plan . . . . . . . . . . 1294-1296

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L.W. MATTESON, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-542C |
| | ) | (Judge Lawrence J. Block) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 5.2(a)(3) and 7.1(c), (e) of the Rules of the United States Court of Federal Claims ("RCFC"), as well as this Court's scheduling order dated October 22, 2003, defendant, the United States, respectfully submits the following reply to "Plaintiff's L.W. Matteson's Opposition to Defendant's Motion For Summary Judgment." As we demonstrate below, the opposition brief filed by plaintiff, L.W. Matteson, Inc. ("Matteson"), demonstrates conclusively that the United States is entitled to judgment as a matter of law pursuant to RCFC 56(b). Accordingly, we respectfully request that the Court enter judgment in our favor.

**INTRODUCTION**

In our motion for summary judgment, we established that each of the counts in Matteson's amended complaint fails as a matter of law.

First, we established that it is undisputed that the United States Army Corps of Engineers ("the Corps") paid Matteson the full contract price, and, thus, could not have breached the contract for failure to pay the full contract price. Def. Mot. at 9, 13-14. Further, Matteson's highly-attenuated superior knowledge claim is facially invalid. Id. at 9, 14-20. The allegedly "vital" information withheld (pertaining exclusively to Matteson-selected alternative disposal

sites, for which use in performing the contract work Matteson expressly assumed all risk) is based upon public local ordinances and the activities of local opposition groups -- publicly-available information that is far outside the scope of the superior knowledge doctrine as a matter of law. Id.

Second, we demonstrated that Matteson's amended complaint fails to state a differing site condition claim because the alleged "change" -- that is, Matteson's failure to obtain local approval to use the alternative site Matteson alone selected to perform the contract work -- was not a physical condition as required by the plain language of the contract's differing site condition clause. Id. at 10, 20-22. Further, the alleged "change" was, in Matteson's view, foreseeable. Id.

Third, our motion for summary judgment established that Matteson cannot demonstrate a cardinal change because the Government did absolutely nothing to alter the scope of the contract. Rather, third parties prevented Matteson from performing the contract in the manner Matteson unilaterally preferred. Id. at 10, 22-24.

Fourth, we demonstrated in our motion that Matteson cannot establish its claims of impossibility and commercial impracticability. Id. at 10, 23-27. Matteson's successful performance of the contract demonstrates that the contract was not objectively impossible. Further, Matteson's alleged 70 percent overrun (the baseline remains unclear) was not so extraordinary as to invoke the doctrine of commercial impracticability. Id.

Fifth, our motion established that Matteson's claim of mistake fails as a matter of law. Id. at 10-11, 27-28. The Government was not mistaken as to any material fact, nor did the Government "approve" Matteson's use of any alternative disposal site. Even assuming, for

argument's sake, that the Government had "approved" a Matteson-selected site, the Government could not have guaranteed that Matteson would timely obtain local permits, nor could the Government have assumed the risk of any permitting process under the terms of the contract. Id. The contract repeatedly shifted the risk to Matteson. Id.

In its opposition to our motion for summary judgment, Matteson demonstrates by logic and omission the merits of our motion.

First, Matteson readily admits that the Corps paid the full contract price. Pl. Opp. at 8. Matteson clarifies that Count I of the amended complaint, which alleges a "failure to pay" is, in actuality, a count alleging breach of the contract's changes clause. Id. at 8-9. Thus, Matteson impliedly concedes that Count I is identical to, and necessarily dependent upon, Count III, which alleges "cardinal change" in the contract. At a minimum, Count I is dependent upon Matteson's ability to establish entitlement to an equitable adjustment based upon allegations in another count of the amended complaint. Count I does not allege an independent breach.

Further, Matteson's opposition demonstrates that Matteson's superior knowledge claim also must be dismissed as a matter of law. Matteson readily admits that the Corps consistently takes the position that, in the absence of a waiver of sovereign immunity, the Corps is not subject to local permitting requirements regarding property owned or leased by the Federal Government. Pl. Opp. at 16-17; Pl. PFUF ¶ 39. Nonetheless, Matteson's superior knowledge claim rests upon the untenable premise that, without explanation, the Corps was exclusively aware of the prospective and allegedly "unique application" of local zoning ordinances to the proposed use of private property which, Matteson itself emphasizes, would have involved "placement of temporary dredging pipes across the protected zone of shoreland property." Id. at 11 (emphasis

in original). Matteson defies credulity by insisting that, as an admittedly experienced private dredging company, it could not have reasonably understood that the "widely known" local Shoreland Protection Act, id. at 4, would have applied to Matteson's proposed land use, which, Matteson always knew, would have affected "the protected zone of shoreland property." Id. at 11.

In any event, even if Matteson's theory were plausible, it would be academic. Matteson readily concedes that any information concerning application of the Shoreland Protection Act was in no way "vital" for purposes of the superior knowledge doctrine. Matteson always knew that its proposed plan would have affected protected shoreland property. Id. Matteson admits that when it learned, specifically, that the Shoreland Protection Act would indeed apply to Matteson's proposed plan, "Matteson did not become concerned about obtaining a permit . . . ." Id. at 15. Thus, faced with a total absence of allegedly withheld "vital" information, Matteson resorts to an unsupportable contention that the Corps allegedly knew and failed to disclose the existence of alleged local opposition that was of a "ferocity, breadth [,] and depth" that only the Corps could have perceived. Id. Superior knowledge of "vital" information cannot be that which is publicly-available, and there is nothing inherently secret about allegedly ferocious public opposition. See Def. Mot. at 16 (citations omitted). At bottom, Matteson's superior knowledge claim defies not only the law of this circuit, but also common sense.

Second, Matteson's opposition concedes that Matteson's differing site condition claim is at odds with the plain language of the contract's differing site condition clause, which applies expressly to an unforeseeable physical condition. Pl. Opp. at 24. Tellingly, Matteson provides no legal authority to support its novel argument that Matteson's allegedly foreseeable failure to

obtain local approval to use an alternative disposal site, see id. at 9-21, which Matteson unilaterally selected, could nonetheless constitute an unforeseeable physical condition within the meaning of the contract's differing site condition clause. See id. at 24.

Third, Matteson's opposition confirms that Count III must be dismissed because it fails to identify any, even theoretical, change to the contract. Id. at 24-30. Matteson fails to allege that the contracting officer ever directed that Matteson perform work outside the scope of the contract. See id. Rather, at most, Matteson alleges that it made a series of unilateral business decisions that it implies were predicated upon a complete disregard for the plain terms of the solicitation and ultimate contract. See id. (alleging Matteson's reliance upon purported oral assurances by the Corps that non-Federal zoning authorities, over whom the Corps had no conceivable control, would timely grant approval for use of non-Federal disposal sites selected unilaterally by Matteson).

Fourth, Matteson concedes that the contract was not impossible to perform. Id. at 30. Rather, Matteson attempts to argue that the contract was commercially impracticable. Id. at 30-35. However, Matteson's argument would render inoperative the contract's myriad so-called "'risk shifting' clause[s]" that required Matteson to make an informed business decision before bidding upon the contract. Id. at 32. As we demonstrated in our motion for summary judgment, there is no precedent suggesting that the alleged overrun for which Matteson expressly assumed the risk in this case would give rise to a claim of commercial impracticability. Def. Mot. at 26-27.

Fifth, Matteson attempts to rescue its mutual mistake claim by stating, without any citation whatsoever, that it is undisputed that the Government was mistaken regarding the

availability of Matteson's various proposed disposal sites. Pl. Opp. at 36. Matteson is flatly wrong: no one in the Government ever formed -- nor would have even been in a position to form -- a conclusion as to whether Matteson would be able to obtain local permits for use of the Saunderson property, or any other alternative disposal site unilaterally selected by Matteson. Indeed, Matteson itself concedes that the Corps took the position that, absent a waiver of sovereign immunity, the Corps did not need to acquire local permits for its projects. Id. at 16-17; Pl. PPUF ¶ 39. Matteson utterly fails to identify any competent evidence that would support its unlikely theory that the Corps somehow developed pointless expertise in local permitting matters, and, ultimately, Matteson unambiguously fails to create a factual issue pursuant to the heavy burden articulated in Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In any event, as a matter of law, Matteson cannot establish a claim of mutual mistake because the contract assigned the risk of any mistake to Matteson. Def. Mot. at 28.

## ARGUMENT

### I. Matteson Fails To Identify Any Factual Issue That Would Enable It To Establish A Breach Of Contract

#### A. Matteson Admits That It Was Paid The Full Contract Price

In our motion for summary judgment, we established that Count I, entitled "Breach of Contract," must be dismissed on its face because there is no dispute that Matteson was paid the full contract price, and Matteson can point to no contract modification that increased the contract price by $1,111,227.51, or any other amount. See Def. Mot. at 12-13.

In its opposition, Matteson admits that the Corps paid the full contract price. Pl. Opp. at

8. Relying exclusively upon Western Contracting Corp. v. United States, 144 Ct. Cl. 318 (1958), Matteson clarifies that Count I of the amended complaint, which alleges a "failure to pay" is, in actuality, a count alleging breach of the contract's changes clause. Id. at 8 (". . . as long as Matteson demonstrates entitlement to additional money, the Corps is in breach for failing to pay."). Thus, Matteson impliedly concedes that Count I is identical to, and necessarily dependent upon, Count III, which alleges "cardinal change" in the contract, or, in any event, upon another count seeking an equitable adjustment. Id. at 8-9. Matteson impliedly concedes that Count I does not advance any independent ground for alleged breach of contract. See id.

**B. Matteson Fails To Establish A Superior Knowledge Claim As A Matter Of Law**

In our motion for summary judgment, we established that Matteson cannot establish a superior knowledge claim as a matter of law. Def. Mot. at 14-17 (citations omitted).

Matteson concedes that, to prevail upon its superior knowledge claim, it must demonstrate that "the Government possesse[d] special knowledge, not shared by the contractor, which is vital to performance of the contract . . . ." Pl. Opp. at 9 (quoting Hardeman-Monier-Hutcherson v. United States, 458 F.2d 1364, 1371-72 (Ct. Cl. 1972) )(other citations omitted). Yet Matteson's opposition fails on at least three counts. First, Matteson affirmatively demonstrates that the Government did not possess special knowledge of local permitting practices, including the "widely known" Shoreland Protection Act, id. at 4, 16-17; Pl. PFUF ¶ 39, and of allegedly ferocious public opposition to Corps projects. Pl. Opp. at 15. Second, Matteson admits that, had it not failed in its duty to investigate local zoning requirements prior to submitting its bid, it still would have been unconcerned by knowledge that the Shoreland

Protection Act would apply to its proposed disposal site. Id. at 15. Third, Matteson fails even to allege that obtaining any local permits was in any way "vital" to performance of the contract. In fact, the contract work could have been performed by using the Corps-provided sites. No local permits were required for use of the Corps-provided sites. See id. at 16-17. Matteson simply made a business decision not to use them.

Indeed, Matteson's superior knowledge claim is fundamentally illogical. Matteson readily admits that the Corps consistently takes that position that, in the absence of a waiver of sovereign immunity, the Corps is not subject to local permitting requirements on property owned or leased by the Federal Government. Id. at 16-17; Pl. PFUF ¶ 39. Matteson contends, without explanation, that the Corps somehow developed a peculiar and wholly unnecessary expertise in local zoning matters. Pl. Opp. at 14. Indispensable to Matteson's argument is the untenable assumption that Matteson, a private dredging company, reasonably relied upon the Federal Government for unpaid legal advice as to the application of all local zoning requirements for use of private property unilaterally selected by Matteson. Ultimately, Matteson's superior knowledge claim rests upon the unsupportable premise that the Corps was -- without explanation -- alone aware of the prospective and allegedly "unique application" of local zoning ordinances to the proposed use of private property which, Matteson itself emphasizes, would have involved "placement of temporary dredging pipes across the protected zone of shoreland property." Pl. Opp. at 11 (emphasis in original). Matteson simply asserts, without explanation, that it -- an admittedly experienced private dredging company -- could not have reasonably understood that the "widely known" local Shoreland Protection Act, id. at 4, would have applied to Matteson's proposed plan that Matteson always knew would have affected "the protected zone of shoreland

property." Id. at 11.

Although Matteson purports to distinguish Giesler v. United States, 232 F.3d 864, 877 (Fed. Cir. 2000), H.N. Bailey & Assocs. v. United States, 449 F.2d 376, 383 (Ct. Cl. 1971), and John Massman Contracting Co. v. United States, 23 Cl. Ct. 24, 31 (1991), upon the grounds that those decisions ostensibly "concern very different factual circumstances and issues than those raised by the Corps' arguments," Pl. Opp. at 12-13, Matteson's attempt to distinguish those precedent upon immaterial narrow grounds is unavailing. Matteson does not even attempt to explain how the allegedly "unique" application of a "widely known" local ordinance could possibly be known only to the Federal Government. Id. at 4, 11. In contrast, in J.A. Jones Constr. Co. v. United States, 390 F.2d 886 (Ct. Cl. 1968), upon which Matteson relies, Pl. Opp. at 9, 15, the "vital" information in that case concerned classified information, not the possible application of a "widely known" public local zoning ordinance to the use of a private piece of property. Similarly, nothing about the individual dispute at issue in Delta Equip. & Constr. Co. v. United States, 104 F. Supp. 549, 551-52 (Ct. Cl. 1952), upon which Matteson also relies, was "widely known." See Pl. Opp. 4, 15.

In any event, Matteson readily concedes that any information concerning application of the Shoreland Protection Act was in no way "vital" for purposes of the superior knowledge doctrine. Matteson admits that when it learned, finally, that the Shoreland Protection Act would indeed apply to Matteson's proposed plan that Matteson always knew would have affected protected shoreland property, id., "Matteson did not become concerned about obtaining a permit . . . ." Id. at 15. Thus, faced with a total absence of allegedly withheld "vital" information, Matteson contends instead that the Corps allegedly knew and failed disclose the

existence of alleged local opposition that was of a "ferocity, breadth [,] and depth" that only the Corps could have perceived. Id.

Matteson's claim that public opposition falls within the superior knowledge doctrine is untenable. The alleged public opposition was either ferocious or it was not. If it was ferocious, then it was certainly not a secret to anyone, including Matteson. If the alleged public opposition was not sufficiently strong to warrant the attention of a diligent contractor investigating all local permitting issues, then it was not, by definition, "vital" information. Superior knowledge of vital information cannot be that which is publicly-available, and there is nothing inherently secret about allegedly ferocious local opposition. See Def. Mot. at 16 (citations omitted). At bottom, Matteson's superior knowledge claim defies not only the law of this circuit, but also common sense.

## C. Matteson Fails To Escape The Plain Language Of The Contract

In our motion for summary judgment, we demonstrated that Matteson's view of the Government's duties in this case was flatly at odds with the plain language of the contract. Def. Mot. at 17-20. For example, Matteson alleges that it "reasonably relied upon the Corps' specifications as conforming to the government's affirmative duty to provide Matteson with any and all information impacting the feasibility of an approved method of performing the work." First Am. Compl. ¶ 66; see also id. ¶¶ 72-75.

Most fundamentally, Matteson fails to address our demonstration that its claimed reliance upon alleged oral statements by Corps officials cannot be squared with the plain meaning of the contract. The Explanation to Prospective Bidders specifically stated: "Oral explanations or

instructions given before the award of a contract will not be binding." Def. App. 985; id. 18-20, 24, 55-60. Nor does Matteson address the contract's express language providing that the Government "assume[d] no responsibility for any conclusions or interpretations made by the Contractor based on the information made available to the Government[.]" Id. 1020-26.

At best, Matteson relies upon Fehlhaber Corp. v. United States, 151 F. Supp. 817 (Ct. Cl. 1957), for the broad proposition that "[t]he contractor is not bound by exculpatory and caveatory [sic] provisions in the contract . . . ." Pl. Opp. at 21 (citing Fehlhaber, 151 F. Supp. at 825). However, Fehlhaber contains no such holding. In Fehlhaber, the court held that the plaintiff was not bound by the exculpatory provisions of the contract and specifications because "[i]t would have been a virtual impossibility . . . for any bidder to make its own borings, analyze them, compute, prepare, and submit its bid after the Invitation for Bids was first published since there was only a 40-day interval between the publication and the opening of the bids." 151 F. Supp. at 825. Here, in stark contrast, Matteson alleges no conceivable rationale as to why it could not have adequately investigated the local zoning requirements for use of an alternative site that Matteson unilaterally selected for performance of the contract. As Matteson itself has demonstrated, the Corps, for its part, was never in a position to become familiar with local zoning requirements, much less to speculate as to the countless ordinances that conceivably could have applied to the countless pieces of private property that bidders might have selected as alternative sites. See Pl. Opp. at 16-17; Pl. PPUF ¶ 39.

Matteson does contend that our reliance upon the contract's plain language rests upon a "warped and incomplete view of Matteson's claims and ignores critical provisions of the contract." Pl. Opp. at 18. However, despite its promise of a response, Matteson never reconciles

its positions with the plain language of the contract upon which we relied in our motion for summary judgment. See id. at 18-21. Rather, Matteson construes the contract, without citation to any supporting language, as having provided that the Corps would undertake a duty to investigate and advise bidders of all local zoning ordinances that may conceivably apply to any private property that the bidder itself unilaterally selects. No language in the contract even remotely supports Matteson's interpretation, which presupposes that the Corps knowingly assumed a burden, and then drafted the written specifications to provide directly the opposite. Matteson has provided no evidence to suggest that the Corps behaved irrationally in this matter. As we demonstrated in our motion for summary judgment, Matteson's defective specification and "specific omission" arguments directly contradict the plain language of the contract, and the United States is entitled to judgment upon Counts VI and VII as a matter of law. Def. Mot. at 17-20.

Finally, Matteson's opposition impermissibly raises a new allegation omitted (for good reason) from the amended complaint: that the Corps allegedly breached its implied duty of cooperation by not directly acquiring the Matteson-selected site so as to avoid application of "state and local laws and ordinances" and thus permit Matteson to use "the site notwithstanding the Shoreland Protection Act." Pl. Opp. at 16-17. Matteson essentially argues that the Corps breached the implied duty of cooperation by not unilaterally modifying the solicitation, after the fact, to increase to six the number of Government-furnished disposal sites and by refusing to give Matteson an unfair competitive advantage over other bidders for the contract.

It is true that every Government contract impliedly obligates its parties to perform their duties in good faith. See Asco- Falcon II Shipping Co. v. United States, 18 Cl. Ct. 484, 491-92

(1989); see also Morris v. United States, 33 Fed. Cl. 733, 751 (1995). In substance, this obligation means "each party will cooperate in performance of the contract and will do nothing to hinder the other party's performance or expectations." Jarvis v. United States, 43 Fed. Cl. 529, 534 (1999). But the implied duty of good faith and fair dealing "must attach to a specific substantive obligation, mutually assented to by the parties." State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996). See also Price v. United States, 46 Fed. Cl. 640 (2000). That is, the implied duty of good faith and fair dealing "does not form the basis for wholly new contract terms, particularly terms which would be inconsistent with the express terms of the agreement." Jarvis, 43 Fed. Cl. at 534 (emphasis supplied). Again, tellingly, Matteson provides no legal authority to support its novel contention that the Corps breached an implied duty of cooperation by not giving the awardee an unfair competitive advantage in modifying the terms of the solicitation, after the fact, to favor one particular bidder. See Pl. Opp. at 16-17.

## II. Matteson Fails To Establish A Possible Differing Site Condition Claim

Much of Matteson's opposition is devoted expressly to precedent dealing with an obsolete "changed conditions clause" that is found nowhere in the contract that it signed with the Corps. Pl. Opp. at 21-23 (citing Briscoe v. United States, 442 F.2d 953 (Ct. Cl. 1971); American Dredging Co., ENGBCA No. 2920, 72-1 BCA ¶ 9316 (1972) (changed condition found where presence of rock at higher elevations was significantly greater than indicated in contract drawings and date); McDowell Stone Co. of Blackwater, BCA No. 285 (1943)). As demonstrated in our motion for summary judgment, the Government has repeatedly explained to Matteson that the contract did not contain "the old changed conditions clause," but, rather, the standard Differing Site Conditions clause, 48 C.F.R. § 52.236-2. Def. Mot. at 20 (citing Def. App. 86, 409).

Ultimately, Matteson's opposition concedes that Matteson's differing sites condition claim is at odds with the plain language of the contract's differing site condition clause, which applies to an unforeseeable physical condition. Pl. Opp. at 24. Indeed, the precedent upon which Matteson relies deals with physical conditions. Id. at 22 (citing R.A. Heintz Constr. Co., ENGBCA No. 3380, 74-1 BCA ¶ 10,562 (1974) (differing site condition found where borrow material was fractured in a manner that could not have been reasonably anticipated); Sundex, Ltd., ASBCA No. 42601, 93-2 BCA ¶ 25,626 (1992) (differing site condition found based upon presence of unusual soil)). Tellingly, Matteson provides no legal authority to support its novel argument that Matteson's ostensibly foreseeable, see id. at 9-21, failure to obtain local approval to use an alternative disposal site that Matteson unilaterally selected could nonetheless constitute an unforeseeable physical condition within the meaning of the contract's differing site condition clause. See id. at 24.

**III. Matteson Cannot Establish A Changed Contract Condition As A Matter Of Law**

As we demonstrated in our motion for summary judgment, a cardinal change "'occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those bargained for.'" Def. Mot. at 22(quoting Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320 (Fed. Cir. 2003): 329 F.3d at 1332 (quoting Krygoski Constr. Co. v. United States, 94 F.3d 1537, 1543 (Fed. Cir. 1996) (other citations omitted))).

Other than some minor, primarily administrative changes that did not significantly affect the work, Def. App. 408, here, the Government effected no changes in the contract. Nothing in Count III constitutes an allegation that the Government changed the contract. To the contrary,

Matteson failed to obtain permission from third parties to use private property to perform the contract work. Therefore, a cardinal change cannot exist as a matter of law, and the United States is entitled to summary judgment upon Count III.

Matteson's opposition confirms that Count III must be dismissed because it fails to identify any, even theoretical, change to the contract. Pl. Opp. at 24-30. Matteson fails to allege that the contracting officer ever directed that Matteson perform work outside the scope of the contract, either orally or in writing. See id. Rather, at most, Matteson alleges that it made a series of unilateral business decisions that were predicated upon a complete disregard for the plain terms of the solicitation and ultimate contract. See id. (alleging Matteson's reliance upon purported oral assurances by the Corps that non-Federal zoning authorities, over whom the Corps had no conceivable control, would timely grant approval for non-Federal disposal sites selected unilaterally by Matteson).

Here, contrary to Matteson's unexplained contention, there was never any "alteration in the contract work." Id. at 26 (quoting Freedom NY, 329 F.2d at 1332). The contract merely required the contractor to excavate and transport existing dredged material from two specified areas located upstream from Alma, Wisconsin. Def. Mot. at 2. It was up to the contractor to select the means to achieve that work. The scope of the work never changed, either explicitly or implicitly.

## IV. Matteson Cannot Establish Its Claims Of Impossibility Or Commercial Impracticability

Matteson concedes that the contract specifications were objectively possible. Pl. Opp. at 30. Thus, Matteson concedes by omission that the United States is entitled to summary judgment upon Count IV, "Breach of Warranty." See Def. Mot. at 23.

Matteson does attempt to rescue Count VIII, entitled "Commercial Impracticability," in which Matteson alleges that "[t]he Corps failed and refused to properly inform Matteson of potential impediments to Matteson's performance, of which the Corps was aware, resulting in an exorbitant difference in Matteson's cost to perform the amount for which it had contracted." First Am. Compl. ¶ 78.

As we demonstrated in our motion for summary judgment, Matteson must demonstrate that its ignorance of local ordinances -- which it claims, led to its inability to use its proposed sites -- was not its fault. Def. Mot. at 24-25 (quoting Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1294 (Fed. Cir. 2002) (quoting United States v. Winstar Corp.. 518 U.S. 839, 904 (1996) (other citations omitted))). As a matter of law, Matteson cannot demonstrate lack of fault. Matteson was aware of the provision in its contract that required it to conduct a thorough site investigation. Def. App. 1009-17. The Corps was entitled to assume that Matteson had conducted rudimentary due diligence as to local permitting requirements before making the business decision to submit its bid. See Ambrose-Augusterfer Corp. v. United States, 394 F.2d 536, 546 (Ct. Cl. 1968) ("no claim arises where a contractor sustains a loss through its own negligence in not examining the site and has failed to take into consideration conditions which actually existed and which had been called to its attention by a warning to visit the site."); Western Empire Constructors, Inc. v. United States, 20 Cl. Ct. 668, 674 (1990) ("Plaintiff . . . had a duty to inquire before entering into the contract with the VA."). Matteson possessed no reasonable basis for assuming that the Corps would ignore the contract's plain language and instead assume responsibility for obtaining Matteson's permits for Matteson. See Def. App. 88.

We further demonstrated that it is settled that "no impossibility defense will lie where the

'language or the circumstances' indicate allocation of risk to the party seeking discharge." Def. Mot. at 25-26 (quoting Seaboard, 308 F.3d at 1295 (citing Winstar, 518 U.S. at 908)). The contract repeatedly and plainly allocated risk of noncompliance with local laws to Matteson. Def. App. 88, 165-66.

Matteson's opposition brief neither acknowledges nor addresses the controlling precedent of Seaboard. Rather, Matteson persists in an argument that would render inoperative the contract's myriad so-called "'risk shifting' clause[s]," each of which necessarily required Matteson to make an informed business decision before acting to bid upon the contract. Id. at 32. Further, as we demonstrated in our motion for summary judgment, there is no precedent suggesting that the alleged overrun for which Matteson expressly assumed the risk in this case would give rise to a claim of commercial impracticability.[1] See Def. Mot. at 26-27.

## V. Matteson Cannot Establish Its Claim Of Mutual Mistake As A Matter Of Law

Finally, Matteson's defense of its mutual mistake claim set forth in Count IX fails. Pl. Opp. at 35-38. As we demonstrated in our motion for summary judgment, to establish a mutual mistake of fact, Matteson must show that: (1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of mistake on the party seeking reformation. Def. Mot. at 27 (citing Dairyland Power Cooperative v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994)). The mistake must be to an

[1] In any event, the alleged overrun was not 70 percent of the Government's estimate. See Def. Mot. at 26 (citing Natus Corp. v. United States, 371 F.2d 450, 457 (Ct. Cl. 1967)). Indeed, at best, Matteson's incurred costs were only 19 percent more than the contract price. Def. App. 414.

existing fact. Id. Further, we demonstrated that reformation cannot be granted if the contract puts the risk on the mistake on the party seeking reformation. Id. at 28 (citing McNamara Constr. of Manitoba, Ltd. v. United States, 509 F.2d 1166, 1168-69 (Ct. Cl. 1975) (citing National Presto Indus., Inc. v. United States, 338 F.2d 99, 108 (Ct. Cl. 1965))). Here, with the exception of requiring the use of one mandatory disposal site, the contract left it up to the contractor to decide how best to perform the contract work. Def. App. 149, 151-52, 1061-62. Accordingly, Matteson is not entitled to reformation as a matter of law.

Matteson attempts to rescue its mutual mistake claim by stating, without any citation whatsoever, that it is undisputed that the Government was mistaken regarding the availability of Matteson's various proposed disposal sites. Pl. Opp. at 36. Matteson is flatly wrong: no one in the Government ever formed -- nor ever would have been in a position to form -- a conclusion as to whether Matteson would be able to obtain local permits for use of the Saunderson property, or any other alternative disposal site unilaterally selected by Matteson. Indeed, no one in the Government ever formed, or would have been in a position to form, an opinion as to whether Matteson would even be able to purchase the Saunderson property.

Matteson itself concedes that the Corps took the position that, absent a waiver of sovereign immunity, the Corps did not need to acquire local permits for its projects. Id. at 16-17; Pl. PPUF ¶ 39. Matteson utterly fails to identify any competent evidence that would support a conclusion that the Corps was somehow mistaken as to Matteson's ability to obtain local permits, and it unambiguously fails to create a factual issue pursuant to the heavy burden articulated in Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In any event, as a matter of law, Matteson cannot establish a claim of

mutual mistake because the contract assigned the risk of any mistake to Matteson. See Def. Mot. at 28.

## CONCLUSION

For these reasons, and the reasons stated in our motion for summary judgment, we respectfully request that this Court grant our motion for summary judgment, enter judgment in favor of the United States, dismiss the First Amended Complaint, and grant such further relief as this Court deems just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307–0164
Fax: (202) 514-8640

OF COUNSEL:
EDWIN C. BANKSTON
District Counsel
Army Corps of Engineers
Saint Paul, MN 55101

NOVEMBER 14, 2003

Attorneys for Defendant

**INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX**

**DOCUMENT** **DEF. APP. PAGES**

Deposition of Daniel J. Krumholz (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1280-1283

Matteson's resubsmittal of Environmental Protection Plan, dated August 12, 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1284-1285

Matteson's resubsmittal of Environmental Protection Plan, dated November 14, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1286

Government's request for resubmittal of Environmental Protection Plan, dated November 19, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1287

Matteson's Environmental Protection Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1288-1290

Matteson's subsmittal of Environmental Protection Plan, dated October 4, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1291

Government's request for resubmittal of Environmental Protection Plan, dated October 21, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1292-1293